UNITED STATES of America,
Plaintiff-Appellee,

v.

SANDOZ PHARMACEUTICALS CORP.,
and 14 Boxes, More or Less, ... Fiorinal With Codeine No. 3, Defendant-Appellant.

No. 88-3691.

United States Court of Appeals,
Sixth Circuit.

Argued June 15, 1989.

Decided Jan. 25, 1990.

Barbara L. Beran, Asst. U.S. Atty., Columbus, Ohio, Eric M. Blumberg (argued), Food & Admin., Rockville, Md., for plaintiff-appellee.

Peter O. Safir (argued), Bonnie A. Beavers, Daniel R. Dwyer, Kleinfeld, Kaplan & Becker, Washington, D.C., Anne S. Davidson, Sandoz Pharmaceuticals Corp., East Hanover, N.J., Mark S. Coco, Jones & Troyan, Columbus, Ohio, for defendant-appellant.

Before JONES and BOGGS, Circuit Judges, and COOK, District Judge [*].

PER CURIAM.

Defendant-appellant, Sandoz Pharmaceuticals Corporation (Sandoz), appeals from the judgment of the district court in favor of plaintiff-appellee, United States of America (Government), acting on behalf of the Food and Drug Administration (FDA), in this *in rem* seizure action filed pursuant

[*] Honorable Julian A. Cook, Jr., United States District Judge for the Eastern District of Michigan, sitting by designation.

to the Federal Food, Drug and Cosmetic Act (Act), 21 U.S.C. § 301 *et seq.* (1982). For the following reasons, we affirm.

### I.

Sandoz first marketed Fiorinal with Codeine (FWC)-type products in 1963, after receiving informal advice from the FDA that the products were not regarded as "new drugs." In 1968, FDA revoked all informal opinions and required manufacturers to file a "new drug application" (NDA) for any product classified as a "new drug" under 21 U.S.C. § 321(p). The NDA must be approved before a new drug may be introduced into interstate commerce. 21 U.S.C. § 355(a). An abbreviated NDA can be used for duplicates of new drugs or closely related drugs. 21 C.F.R. § 314.56 (1988).

In 1977, the FDA approved Fiorinal as a "new drug" effective for treating tension headaches. Thereafter, Sandoz sought approval of its FWC products through the abbreviated NDA procedure, contending that the FWC products were closely related to the previously approved drug, Fiorinal. FDA officials rejected Sandoz's arguments, finding that FWC products were "new drugs" requiring full NDA's. In November 1984, the FDA sent Sandoz a regulatory letter which stated that the FWC products were considered "new drugs," and that its continued marketing of FWC products without approval of a NDA would violate 21 U.S.C. § 355. Subsequently, Sandoz submitted a NDA for the FWC products and another request that the FDA accept an abbreviated NDA for these products. Upon preliminary review of the NDA, the FDA found that the application was not approvable, and also rejected Sandoz's request for an abbreviated procedure. Thereafter, Sandoz notified the FDA that it believed the FWC products were not new drugs and submitted several studies indicating that FWC products were both safe and effective. However, the FDA declined to reverse its position.

On June 17, 1986, the Government filed a complaint in the United States District Court for the Southern District of Ohio, and subsequently seized several boxes containing Fiorinal with Codeine No. 3 (FWC No. 3). Approximately four months later, the Government brought a separate complaint for forfeiture in the United States District Court for the Northern District of New Jersey, alleging that two other drugs distributed by Sandoz, Fiorinal with Codeine No. 1 and Fiorinal with Codeine No. 2 (FWC No. 1 and FWC No. 2) were "new drugs" that could not be marketed without FDA approval. After evaluating documentary evidence submitted by both parties (the same clinical evidence and testimony filed in the Ohio action), the New Jersey district court granted summary judgment to the Government, finding that FWC No. 1 and FWC No. 2 are "new drugs" within the meaning of 21 U.S.C. § 321(p). *United States v. 225 Cartons, More or Less, of an Article of Drug,* 687 F.Supp. 946 (D.N.J. 1988), *aff'd,* 871 F.2d 409 (3d Cir.1989).

In the instant action, the Ohio district court ruled that Sandoz was collaterally estopped from relitigating the issue of whether FWC No. 3 is a "new drug." The court entered a permanent injunction and ordered that the seized articles be destroyed; however, these orders were stayed pending the outcome of Sandoz's appeals.

### II.

Sandoz argues that the district court erred in finding that this action is barred by the doctrine of collateral estoppel. The availability of collateral estoppel is a mixed question of law and fact which we review *de novo. Plaine v. McCabe,* 797 F.2d 713, 718 (9th Cir.1986). However, once it is established that the elements of collateral estoppel are present, a district court has broad discretion to determine when the doctrine should be applied offensively. *Id.*

The doctrine of collateral estoppel may be applied only if four criteria have been satisfied:

(1) the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding;

(2) determination of the issue must have been necessary to the outcome of the prior proceeding;

(3) the prior proceeding must have resulted in a final judgment on the merits; and

(4) the party against whom estoppel is sought must have had full and fair opportunity to litigate the issue in the prior proceeding.

*Detroit Police Officers Association v. Young*, 824 F.2d 512, 515 (6th Cir.1987). Sandoz claims that neither the first, second, nor the fourth criteria have been satisfied.

### A.

The Ohio district court properly noted that the drug at issue here (FWC No. 3) and the drugs involved in the New Jersey action (FWC No. 1 and FWC No. 2) contain four ingredients, three of which are identically formulated. The only distinction between the three drugs is the amount of the fourth ingredient, codeine. Sandoz presents two reasons why the precise issues in the Ohio case are different than those in the New Jersey action.

First, Sandoz argues that the different amounts of codeine in the FWC products require different determinations of the "new drug" status of each product. We reject this argument. Both legal actions required identical showings that each ingredient contributes to the claimed effect. In fact, in both the New Jersey and Ohio forums, Sandoz defended the efficacy of its products with the same six studies and expert declarations.[1] The New Jersey district court found that Sandoz failed to show the contributions of the non-codeine components to the efficacy of the FWC products, the same showing required for FWC No. 3 in the Ohio proceeding. This finding renders the issue of codeine's contribution to FWC No. 3 immaterial. As a result, Sandoz has no basis for its claim that the evidence for FWC No. 3 is stronger than the evidence for FWC No. 1 and FWC No. 2.

Second, Sandoz contends that the New Jersey action involved an "unmixed" question of law, or "issues of law which arise in successive actions involving unrelated subject matter." *United States v. Stauffer Chemical Co.*, 464 U.S. 165, 170 n. 3, 104 S.Ct. 575, 578 n. 3, 78 L.Ed.2d 388 (1984) (citation omitted). In such cases, the courts do not give the legal decisions collateral estoppel effect. Sandoz notes that the instant case is based on a different cause of action, predicated on a different *res,* and presents a different legal question than the New Jersey action. As such, Sandoz claims that there must be different legal evaluations of the evidence supporting the drugs' effectiveness.

We find this argument unpersuasive. The Supreme Court has severely limited the "unmixed" question of law exception. The *Stauffer* Court noted that the exception requires a determination that the " 'issue of law' arises in a successive case that is so unrelated to the prior case that relitigation of the issue is warranted." *Id.* at 171, 104 S.Ct. at 579. In the instant case, the factual and legal issues are almost identical. In both the New Jersey and Ohio actions, the Government seized drugs to prevent their sale and distribution pending a submission of a NDA. In addition, the judgment in both cases rested upon a determination of the validity and relevance of clinical studies, which are by *definition* fact-based evaluations, and an assessment of whether these fact-based evaluations meet the standards set forth in the FDA regulations. Thus, we find that because the New Jersey judgment was a mixed question of fact and law in an action very similar to the instant case, the application of collateral estoppel in this case was permissible.

### B.

Sandoz also argues that the second and fourth criteria for collateral estoppel were

---

1. The New Jersey district court determined that four of the six studies on which Sandoz relied were not relevant to the seized articles because they tested old FWC drugs. The remaining two studies did not provide any evidence of the effectiveness of individual ingredients. 687 F.Supp. at 952–53.

not present. Sandoz first maintains that the findings of the New Jersey district court were not necessary to the outcome of that proceeding. In particular, Sandoz claims that the only finding necessary to its judgment was that there has been no study of any new formulation of FWC No. 1 or FWC No. 2 to determine the contribution of caffeine, one of the non-codeine ingredients. This argument is unpersuasive because Sandoz submitted the six clinical studies into evidence in the New Jersey action in order to defend FWC No. 1 and FWC No. 2. Having placed the studies at issue, Sandoz cannot now argue that it was unnecessary for the New Jersey district court to rule on their relevance.

Sandoz next contends that it did not have a full and fair opportunity to litigate in New Jersey because it was denied discovery. We reject this claim. The only factual issue presented by the Government's motion for summary judgment in New Jersey concerned whether there were adequate and well-controlled published clinical studies showing that the dosage of each ingredient in FWC No. 1 and FWC No. 2 contributed to the effects claimed by Sandoz for these drugs. Because Sandoz failed to identify any undiscovered essential fact relevant to this issue, to show that the denial of its discovery request was unfair, or to show that discovery could have led to a different result in either jurisdiction, we find that Sandoz had a full and fair opportunity to litigate in the New Jersey proceeding.

### III.

Sandoz argues that even if the elements of collateral estoppel are present, its application in the instant case would not be fair. In *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 330–31 and n. 15, 99 S.Ct. 645, 651–52 and n. 15, 58 L.Ed.2d 552 (1979), the Supreme Court indicated two situations in which the application of offensive collateral estoppel can be unfair to defendants: (1) if a defendant in the first action is sued for small or nominal damages, he may have little incentive to defend vigorously; and (2) if the defendant in the

first action was unable to engage in full scale discovery or call witnesses, application of offensive estoppel may be unwarranted.

Sandoz contends that it did not have an adequate incentive to defend the New Jersey action vigorously for the following three reasons: FWC No. 1 and FWC No. 2 generate lower revenues than FWC No. 3; the Ohio case was instituted before the New Jersey case; and the evidence to support FWC No. 3 was generally stronger than that supporting FWC No. 1 and FWC No. 2. Sandoz maintains that undefined time constraints and the relatively weaker case in New Jersey forced it to scale down its defense in that action.

We find these arguments unpersuasive. First, the amount of revenues at stake in the New Jersey action was not nominal, especially since sales of the drugs in question generated over three million dollars a year. Second, the record does not show that time constraints were imposed on Sandoz as a result of the New Jersey action. Finally, there is nothing in the record to indicate that the evidence presented in the New Jersey action differed from the evidence presented here. Thus, we conclude that Sandoz had ample incentive to litigate both actions vigorously as long as both actions were pending.

With respect to Sandoz's argument under the second *Parklane* situation, that full-scale discovery was not permitted, we have already concluded that the New Jersey proceeding gave Sandoz a full and fair opportunity to prove that FWC products are not "new drugs." Finally, Sandoz contends that the Government's choice of forum was unfair because it did not receive a full hearing in the New Jersey district court. However, there is no evidence that the New Jersey forum was more inconvenient than Ohio or that it deprived Sandoz of any procedural opportunities available in Ohio. *Parklane*, 439 U.S. at 332, 99 S.Ct. at 652. Thus, we conclude that the application of offensive collateral estoppel against Sandoz is not unfair under the *Parklane* criteria.

## IV.

Finally, Sandoz maintains that collateral estoppel is not available in the instant case because the New Jersey district court failed to decide whether FWC No. 3 fits within the *Bentex* exception. In *Weinberger v. Bentex Pharmaceuticals*, 412 U.S. 645, 93 S.Ct. 2488, 37 L.Ed.2d 235 (1971), the Court established a limited exception to the well-controlled clinical investigations requirement. But, contrary to Sandoz's claim, the New Jersey district court fully examined this claim before rejecting it. The court stated:

> The Supreme Court [in *Bentex*] did not refer to long-used drugs as being within such an exception, and subsequent case law does not disclose any specific category of cases which would fall within this dictum. The long use situation has specifically been held not to fall within any exception to the well-controlled clinical investigations requirement.

687 F.Supp. at 959–60. Thus, Sandoz's *Bentex* claim fails.

## V.

Accordingly, for above stated reasons, the judgment of the district court is AFFIRMED.