922 F.2d 841
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
SUMMERS HARDWARE AND SUPPLY COMPANY, INC., Plaintiff-Appellant,
v.
VERMONT MUTUAL INSURANCE CO., Defendant-Appellee.
 No. 89-5552.
 United States Court of Appeals, Sixth Circuit.
 Jan. 8, 1991.
 
 Before KRUPANSKY and DAVID A. NELSON, Circuit Judges, and BELL, District Judge.*
 PER CURIAM.
 
 
 1
 This is a diversity case brought by a landlord against its tenant's insurance carrier. The lease agreement appeared to obligate the tenant to maintain liability insurance covering anyone injured on or about the leased premises, and the defendant insurance company gave the tenant an oral binder for such insurance. The tenant's son was then injured on a construction lift, owned by the landlord, that was being used to move the tenant's property into the leased premises. The insurance company denied that the binder gave the landlord any protection with respect to this sort of accident, and the present lawsuit followed.
 
 
 2
 In addition to suing the insurance company in federal court, the landlord sued the tenant in a state court in Tennessee. The landlord contended there, as it did in its federal case, that the tenant's contractual obligation to obtain liability insurance was broad enough to require insurance covering the son's accident. While the landlord claimed in the federal case that the insurance obtained by the tenant met the requirements of the lease, with the result that the insurance company was liable under the binder, the landlord claimed in the state case that the insurance obtained by the tenant did not meet the requirements of the lease, with the result that the tenant was liable for breach of contract. The threshold issue raised by the landlord was the same in both cases: Did the lease require the tenant to provide insurance coverage extending to the son's accident, or did it not?
 
 
 3
 The federal case was decided first. A federal magistrate entered summary judgment in favor of the insurance company and against the landlord, holding that the lease did not obligate the tenant to obtain coverage extending to the son's accident. The state trial court subsequently granted summary judgment to the tenant on the same ground, holding explicitly that the lease agreement "does not obligate [the tenant] to ... provide insurance protecting [the landlord] with respect to this accident...." The state court declined to determine the collateral estoppel effect of the federal court decision, finding it unnecessary to address that question. The judgment of the state trial court was affirmed on appeal without any reference being made to the federal litigation, and an application for permission to appeal to the Supreme Court of Tennessee was denied.
 
 
 4
 The insurance company argues that because the scope of the oral binder depends on the scope of the tenant's contractual obligation to provide insurance, and because it has now been established in the state courts that the tenant had no obligation to obtain insurance that would extend to the son's accident, the landlord is collaterally estopped from seeking relief inconsistent with the state court judgment. We agree. The insurance company's defensive use of the collateral estoppel doctrine is appropriate under Tennessee law, the plaintiff landlord having had a fair and full opportunity to litigate in state court the threshold issue common to both its lawsuits, and we see no reason why collateral estoppel may not be invoked in this case at the appellate level. Although we might have decided the case differently were it not for the result reached in the Tennessee litigation, we shall affirm the magistrate's judgment on collateral estoppel grounds.
 
 
 5
 * The underlying facts are not disputed. Plaintiff Summers Hardware and Supply Co. owned a two-story building called "the annex," which was located across the street from its main office in Johnson City, Tennessee. The upper floor of the annex was vacant, and Summers Hardware agreed to lease the space to John Steele, an artist, for use as a studio.
 
 
 6
 The lease agreement was memorialized in a written instrument drafted by the hardware company's lawyers. In paragraph 12 of the lease Mr. Steele agreed to indemnify Summers Hardware and hold it harmless from any liability arising in connection with the lease or in connection with Steele's occupation of the premises, including any liability that Summers Hardware might incur "because of any person injured on or about the leased premises." Mr. Steele further agreed "to maintain liability insurance [in the amount of $25,000 per person] covering anyone who may be injured on or about the premises...."[1]
 
 
 7
 Before he moved into the studio Mr. Steele telephoned a local representative of Vermont Mutual Insurance Co. and read the lease to her over the phone. She committed Vermont Mutual to writing the insurance. Vermont Mutual concedes that an oral binder for the coverage specified in the lease was in effect at the time of the accident.
 
 
 8
 The accident occurred as Mr. Steele and two helpers, one of whom was Steele's son Paul, were in the process of moving a table saw up to the second floor of the annex. The only access to the second floor provided for in the lease agreement was via an outside stairway,[2] but as a favor to Mr. Steele, Summers Hardware offered to let him make use of the company's construction lift while moving in. The lift, which had been installed by company employees some 11 years earlier, had a platform that moved up and down between the ground floor of the annex and a hole cut in the middle of the floor above. The lift itself was not covered by the lease. When the platform reached the upper floor level, however, a passenger standing on the platform would be within the leased space.
 
 
 9
 On the day of the accident Mr. Steele and his helpers were let into the ground floor of the annex by a Summers Hardware employee named Davidson. Using a dolly, the men wheeled Mr. Steele's table saw to the lift and placed it on the platform. Paul Steele was asked to ride up to the second floor with the table saw. When the lift platform reached its destination, there was a loud snap, the platform fell to the floor below, and the resulting impact left Paul Steele with injured feet. Paul, his father, and Mr. Davidson all swore that the lift platform had reached the upper floor before the accident, which meant that Paul was actually within the leased premises at the start of his fall.
 
 
 10
 Paul and his wife brought a tort action against Summers Hardware in a Tennessee court. Summers tendered the defense to Vermont Mutual, which declined the tender. The tort case was eventually settled. Summers Hardware then sued the senior Mr. Steele in state court, seeking damages for an alleged breach of Steele's contractual obligation to maintain liability insurance and to indemnify Summers Hardware himself. At the same time, as noted above, the hardware company filed the present lawsuit against Vermont Mutual, asserting a breach of the oral contract of insurance.
 
 
 11
 By consent of the parties, the case against the insurance company was referred to a United States magistrate pursuant to 28 U.S.C. Sec. 636(c). On cross motions for summary judgment, and after oral argument, the magistrate entered final judgment in favor of the insurance company. The magistrate concluded that although Summers Hardware did not lack standing to sue as an insured or as a third-party beneficiary under the insurance binder, Mr. Steele had no contractual obligation personally to indemnify Summers Hardware against the consequences of the hardware company's own negligence. The magistrate seemed to believe that the insurance which Mr. Steele was obligated to provide was intended to cover only injuries that came within the scope of his personal indemnification commitment. In any event, the magistrate held, Paul Steele was not injured "on or about the [leased] premises."
 
 
 12
 Summers Hardware perfected a timely appeal from the magistrate's judgment. Soon after the filing of the notice of appeal, summary judgment was granted to Mr. Steele in the hardware company's state court case. Not only was Steele under no contractual duty to indemnify Summers Hardware against the consequences of its own negligence, the state court held, he was under no contractual duty to maintain insurance with respect to the lift or with respect to Paul's accident.
 
 
 13
 The state court's pronouncement on the insurance question cannot be dismissed as mere obiter dictum. The duty to maintain insurance extending to an accident such as Paul Steele's was clearly at issue in the state court action, because paragraph seven of the hardware company's complaint against Paul's father alleged, among other things, that "Defendant ... failed to have liability insurance in effect covering Paul B. Steele at the time of his injury." Paragraph eight alleged that "[t]he above matters constitute a breach of the lease provisions."
 
 
 14
 Subsequent to oral argument in the federal case, a state court of appeals affirmed the state trial court's judgment against Summers Hardware. The ruling of the state appellate court was brought to our attention through a motion to supplement the record. The insurance company later advised us through a similar motion of the denial of an application for permission to appeal to the Tennessee Supreme Court. The Tennessee litigation thus having come to an end, the insurance company asks us to decide this appeal in its favor under the doctrine of collateral estoppel.
 
 II
 
 15
 The lease, as we have seen, seemed to obligate Mr. Steele to maintain liability insurance with respect to anyone who might be injured "on or about the premises." Because the oral insurance binder was intended to provide the full amount of coverage that Mr. Steele was obligated to carry, the binder necessarily provided coverage with respect to anyone injured "on or about the premises" unless the binder was intended not to go beyond Mr. Steele's obligation personally to indemnify the hardware company. (The latter obligation did not extend to Paul's accident, the Tennessee courts held, because Tennessee follows the rule that although a contract may contain general language that seems broad enough to provide for indemnification with respect to the consequences of the indemnitee's own negligence, the contract will not be so construed unless it expresses such an intent "in the clearest of language.")
 
 
 16
 As an original proposition, we should have thought that Paul Steele--who was actually inside the leased premises when his fall started--was injured "about" the premises, just as he would have been had he fallen through a weak spot in the upper floor and injured himself on impact with the floor below. Whether the scope of the obligation to obtain insurance was limited to the scope of Mr. Steele's personal indemnification obligation strikes us as a more difficult question, but how we might have answered that question if we were writing on a clean slate is immaterial. The Tennessee courts having concluded, for whatever reason, that the lease did not obligate Mr. Steele to provide insurance protecting Summers Hardware with respect to Paul's accident, we are precluded from deciding the issue otherwise.
 
 
 17
 Under the doctrine of collateral estoppel as currently applied in Tennessee, "a plaintiff who deliberately selects his forum is bound by an adverse judgment therein in a second suit involving the same issues, even though [the] defendant in the second suit was not a party, nor in privity with a party, in the first suit." Fourakre v. Perry, 667 S.W.2d 483, 487 (Tenn.App.1983), quoting 50 C.J.S., Judgments, Sec. 765. There can be no "mutuality of estoppel" in such a situation, as the Tennessee court noted, because a judgment adverse to the defendant in one suit would not preclude a different defendant from seeking a different result in a different suit. But the absence of mutuality does not bar defensive use of the collateral estoppel doctrine, Fourakre teaches, where the plaintiff submitted the controlling issue to a tribunal having full authority to decide it and that tribunal decided the issue adversely to the plaintiff: "Plaintiff has had his day in court on that issue, and may not have another." Fourakre, 667 S.W.2d at 488. Cf. Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313 (1971), where the Supreme Court of the United States reached a similar result under federal law.
 
 
 18
 Where federal law applies, we have said that four criteria must be met before the doctrine of collateral estoppel may be used to preclude further judicial review of an issue:
 
 
 19
 "(1) the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding;
 
 
 20
 (2) determination of the issue must have been necessary to the outcome of the prior proceeding;
 
 
 21
 (3) the prior proceeding must have resulted in a final judgment on the merits; and
 
 
 22
 (4) the party against whom estoppel is sought must have had full and fair opportunity to litigate the issue in the prior proceeding." United States v. Sandoz Pharmaceuticals Corp., 894 F.2d 825, 826-27 (6th Cir.), cert. denied, 111 S.Ct. 45 (1990).
 
 
 23
 Cf. Detroit Police Officers Ass'n v. Young, 824 F.2d 512, 515 (6th Cir.1987), citing authorities to support each criterion. We have no reason to suppose that the criteria are any different under Tennessee law.
 
 
 24
 Summers Hardware does not suggest that the last three criteria have not been met in the present situation, but the company argues that the precise issue raised in the instant case was not the issue litigated in the state courts. We do not find this argument persuasive.
 
 
 25
 It is true, of course, that the claim asserted in the state court was based directly on the lease, while the claim asserted in federal court was based on the oral binder of insurance. It is also true that the Tennessee courts would tend to resolve ambiguities in the lease in Mr. Steele's favor, while they would tend to resolve ambiguities in the insurance contract in favor of Summers Hardware. The cause of action asserted by Summers Hardware against Mr. Steele is obviously not identical to the cause of action asserted by Summers Hardware against Vermont Mutual. But the lack of identity between the causes of action does not mean that there can be no identity between individual issues raised by the plaintiff in its different lawsuits.
 
 
 26
 In both lawsuits, as we explained at the outset of this opinion, Summers Hardware alleged that the lease required John Steele to take out insurance against liability for anyone injured on or about the premises. Summers Hardware would obviously have had to prevail on that issue in order to establish a breach of Mr. Steele's contractual obligation to maintain insurance, just as it would have had to prevail on that issue in order to establish a breach of Vermont Mutual's commitment to provide the coverage called for by the lease. Summers Hardware had a full and fair opportunity to litigate the issue in state court, and the issue was resolved against the company in a final judgment. All of the criteria necessary for application of the doctrine of collateral estoppel would thus appear to have been met.
 
 
 27
 This case is unusual in that the defendant insurance company seeks to have the doctrine applied in the first instance at the appellate level. Summers Hardware does not argue that collateral estoppel cannot be invoked on appeal, and we see no reason in principle why the defendant should not be allowed so to invoke it, at least in a diversity case where we must apply state law and where the judgment on which the party invoking the doctrine relies is a state court judgment applying state law.
 
 
 28
 Because the first resolution of the scope-of-the-duty-to-insure issue came in the federal district court, the state trial court might well have chosen to dispose of that issue on collateral estoppel grounds itself. If it had done so, the state court judgment would have had no preclusive effect in this appeal--and if we had reversed the federal judgment before the state appellate court acted, we presume that the original federal judgment would have lost any preclusive effect the state court of appeals might otherwise have given it. See Friedenthal, Kane & Miller, Civil Procedure, Sec. 14.7, pp. 648-49. That is not how matters developed, however, and in the end we have a federal court of appeals giving preclusive effect to a final judgment in which the state court decided the dispositive issue on its merits under state law. Because state law controls, it is probably just as well that the scenario unfolded in the way it did.
 
 
 29
 The various motions to supplement the record are GRANTED, and the judgment is AFFIRMED.
 
 
 
 *
 The Honorable Robert Holmes Bell, United States District Judge for the Western District of Michigan, sitting by designation
 
 
 [1]
 The full text of paragraph 12 reads as follows:
 "12. Lessee agrees to indemnify and hold the Lessor harmless from any liability whether in tort or contract, in any way arising in connection with this Lease or in connection with the Lessee's occupation of the premises. The Lessee agrees to maintain liability insurance covering anyone who may be injured on or about the premises in the amount of $25,000.00 per person and $50,000.00 per occurrence. The Lessee agrees to hold Lessor harmless and pay any and all liability that Lessor may incur because of any person injured on or about the leased premises. Further, Lessee agrees to hold Lessor harmless and assume all liability to any person on account of any property damages resulting from Lessee's use of the leased premises."
 
 
 [2]
 The lease agreement contained the following description of the premises covered by the lease: "The upper floor of the Summers Hardware Annex ... including the stairway going up to the second floor and all of the floor space on the second floor of said building."