UNITED STATES of America, Plaintiff,

v.

21 APPROXIMATELY 180 KG. BULK METAL DRUMS, MORE OR LESS, OF AN ARTICLE OF FOOD AND DRUG...., Defendant,

Efamol, Inc., Claimant.

No. 88–0101–P.

United States District Court,
D. Maine.

April 9, 1991.

David R. Collins, Asst. U.S. Atty., Portland, Me., Mary K. Pendergast, Associate Chief Counsel for Enforcement, Office of the Gen. Counsel, Dept. of Health & Human Services, Food and Drug Admin., Rockville, Md., for U.S.

John A. Graustein, Portland, Me., Robert A. Dormer, A. Wes Siegner, Jr., James R. Phelps, Washington, D.C., for Efamol, Inc.

## MEMORANDUM OF DECISION AND ORDER

GENE CARTER, Chief Judge.

Plaintiff United States of America seized Defendant 21 Metal Drums pursuant to an order of this Court issued March 31, 1988. *See* Order for Arrest of Property (Docket No. 2). The drums contain articles of food and drug consisting in whole or part of either Evening Primrose Oil or Black Currant Oil (a/k/a Starflower Oil). Plaintiff alleges that these articles are misbranded drugs and/or adulterated foods containing unsafe food additives held for sale after shipment in interstate commerce in violation of the Federal Food, Drug, and Cosmetic Act (hereinafter Act). 21 U.S.C. § 301 *et seq.*[1] Claimant Efamol, Inc. denies that the articles are "drugs," as that term is defined in 21 U.S.C. section 321(g), or "food additives," under 21 U.S.C. section 321(s), and further denies that the articles were misbranded under 21 U.S.C. section 352(f)(1).[2] Plaintiff now moves for summary judgment on its Complaint[3] seeking condemnation of the seized articles and any other appropriate relief.

## I. SUMMARY JUDGMENT

A motion for summary judgment must be granted if:

the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show

---

1. The Court notes, as a preliminary matter, that Plaintiff need only prove a violation of one section of the Act to justify condemnation under 21 U.S.C. section 334.

2. Claimant does not dispute that the articles were shipped in interstate commerce.

3. Plaintiff's original Complaint was filed with this Court on March 30, 1988. *See* Complaint for Forfeiture (Docket No. 1). Plaintiff subsequently amended its Complaint to plead with greater particularity the substances contained in the seized drums. *See* First Amended Complaint for Forfeiture (Docket No. 25). Any reference to the Complaint herein includes both documents.

that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). The moving party's initial burden is to demonstrate to the Court that there is no *genuine* issue of *material* fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). The Court of Appeals for the First Circuit has explained the summary judgment process as follows:

> [T]he movant must adumbrate 'an absence of evidence to support the nonmoving party's case.' *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When that is accomplished, the burden shifts to the opponent to establish the existence of a fact issue which is both 'material,' in that it might affect the outcome of the litigation, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Hahn v. Sargent,* 523 F.2d 461, 464 (1st Cir.1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976), and 'genuine,' in that a reasonable jury could, on the basis of the proffered proof, return a verdict for the opponent. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *Oliver v. Digital Equipment Corp.,* 846 F.2d 103, 105 (1st Cir.1988). It is settled that the nonmovant may not rest upon mere allegations, but must adduce specific, provable facts demonstrating that there is a triable issue. 'The evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve at an ensuing trial.' *Mack v. Great Atlantic and Pacific Tea Co.,* 871 F.2d 179, 181 (1st Cir.1989). As the Supreme Court has said:

> [T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11.

*Brennan v. Hendrigan,* 888 F.2d 189, 191–92 (1st Cir.1989) (quoted in *MCI Telecommunications Corp. v. Franklin–Centennial Corp.,* 128 F.R.D. 158, 158–59 (D.Me. 1989)).

Plaintiff and Claimant do not dispute, in large part, the material facts of this case. The articles seized by Plaintiff include the following: (1) bulk Evening Primrose Oil (hereinafter EPO) and Vitamin E; (2) capsules containing EPO and Vitamin E; (3) "Efacom" capsules containing EPO, fish oil, and vitamin E; (4) "Efamol PMS" capsules containing black currant oil (hereinafter BCO), fish oil, various vitamins and minerals; and (5) "Efamax" capsules containing BCO, fish oil, various vitamins and minerals, and other ingredients. These products were all in the process of being shipped for further processing (in the case of the bulk EPO), distribution, and sale.

Plaintiff has adduced uncontradicted evidence that Claimant has distributed promotional materials claiming that EPO, alone and in combination with other ingredients, helps to prevent, treat, or cure a broad array of maladies ranging from atopic dermatitis to cancer, obesity, and schizophrenia. Similarly broad claims have been made regarding the Efacom and Efamax capsules. Plaintiff's evidence also establishes that Claimant has represented that Efamol PMS prevents, treats, or cures premenstrual syndrome and its associated symptoms. In addition, Claimant admitted in response to interrogatories that each of these items is intended for use as a nutritional or dietary supplement.

## II. EPO AND BCO AS UNSAFE FOOD ADDITIVES

### A.

The Act defines a "food additive" to be any substance the intended use of which results or may reasonably be expected to result, directly or indirectly, in its becoming a component or otherwise affecting the characteristics of any food (including any substance intended for use in pro-

ducing, manufacturing, packing, processing, preparing, treating, packaging, transporting, or holding food; and including any source of radiation intended for any such use), if such substance is not generally recognized, among experts qualified by scientific training and experience to evaluate its safety, as having been adequately shown through scientific procedures (or, in the case of a substance used in food prior to January 1, 1958, through either scientific procedures or experience based on common use in food) to be safe under the conditions of its intended use. . . .

21 U.S.C. § 321(s). By definition, any food which contains an unsafe "food additive" as defined above is "adulterated," 21 U.S.C. § 342(a)(2)(C), unless it is either the subject of an exemption under the Act or "there is in effect, and [the food] and its use or intended use are in conformity with, a regulation issued under this section prescribing the conditions under which such additive may be safely used." 21 U.S.C. § 348(a). *See also* 21 U.S.C. § 348(i). Adulterated food articles introduced into interstate commerce are subject to seizure, condemnation, and destruction or sale in accordance with a court order. 21 U.S.C. §§ 334(a)(1), 334(d). *See generally United States v. An Article of Food*, 752 F.2d 11, 14–15 (1st Cir.1985).

The dispositive legal questions in this case, therefore, are (1) whether EPO and BCO were intended for use as foods or as components of foods, and (2) whether EPO and BCO are generally recognized as safe.[4]

## B.

▮ Plaintiff argues that the Court can resolve this motion, at least with respect to the seized EPO, by giving collateral estoppel (issue preclusive) effect to an order issued in the United States District Court for the Central District of California granting summary judgment to Plaintiff and

against Claimant in a related case involving EPO. *See United States of America v. 45/194 kg. drums . . . "Pure Vegetable Oil" . . .*, Docket No. 89–73–MRP, slip op., 1989 WL 248572 (C.D.Cal. Nov. 27, 1989) (Pfaelzer, J.).[5]

Judge Pfaelzer made the following findings of fact and conclusions of law:

(1) "The seized evening primrose oil was intended for use as a component of a nutritional or dietary supplement." *Id.* at 2.

(2) "Drs. Robert E. Olson, Garret A. Fitzgerald, William A. Sibley, Howard W. Sprecher, John E. Vanderveen, Hilteje Irausquin, and Gloria J. Troendle—experts qualified by scientific training and experience to evaluate the safety of evening primrose oil—do not consider evening primrose oil to be generally recognized as safe for use as a nutritional or dietary supplement." *Id.* at 3.

(3) "Drs. Olson, Fitzgerald, Sibley, Sprecher, Vanderveen, Irausquin, and Troendle do not recognize evening primrose oil as having been shown through scientific procedures to be safe for use as a nutritional or dietary supplement." *Id.*

(4) "Evening primrose oil is a food within the meaning of 21 U.S.C. § 321(f)." *Id.* at 4.

(5) "Evening primrose oil is not generally recognized as safe by qualified experts, and is therefore a food additive within the meaning of 21 U.S.C. § 321(s)." *Id.*

(6) "There is no regulation in effect permitting the use of evening primrose oil as a food additive or exempting evening primrose oil from the food additives requirements of the Federal Food, Drug, and Cosmetic Act." *Id.*

(7) "Evening primrose oil is an unsafe food additive and adulterated within the

---

4. The parties do not dispute the fact that there is no regulation governing the use of either EPO or BCO.

5. The availability of the collateral estoppel doctrine in cases of this kind is not seriously in

dispute. *See, e.g., United States v. Sandoz Pharmaceuticals Corp.*, 894 F.2d 825 (6th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 45, 112 L.Ed.2d 21 (1990). The question here is the propriety of applying the doctrine in this instance.

184

meaning of 21 U.S.C. §§ 342(a)(2)(C) and 348." *Id.*

(8) "The evening primrose oil is subject to condemnation and destruction pursuant to 21 U.S.C. §§ 331(a), 331(b), and 334(a)(1)." *Id.*

There can be little doubt that these findings and conclusions, if given issue preclusive effect, are dispositive of the case against the EPO.

■ Five elements must be present before issue preclusion may be applied: (1) the issue was actually litigated in the first forum; (2) that litigation produced a valid and final judgment; (3) the determination was essential to the judgment in the first forum; (4) the issues are identical in the first and second forums; and (5) the parties are identical in the first and second forums. *NLRB v. Donna–Lee Sportswear Co., Inc.,* 836 F.2d 31, 34 (1st Cir.1987). The only genuine dispute involves the question of whether the question presented herein was actually litigated in the previous summary judgment action in the United States District Court.[6]

■ Claimant argues that collateral estoppel should not attach because new evidence of the safe use of EPO is available, and therefore the *current* view of the safe use of EPO was not actually litigated in the California federal district court. The Act is perfectly clear, however, on the relevant time period for determining whether a product is safe: "Any article of food, drug, or cosmetic that is adulterated or misbranded *when introduced into or while in interstate commerce or while held for sale* ... shall be liable to be proceeded against...." 21 U.S.C. § 334(a)(1) (emphasis added). Thus, any new information on the safe use of EPO is irrelevant to the question of whether these articles, seized in interstate commerce in early 1988, are subject to condemnation. *See* 21 U.S.C. § 334(d). The relevant issue was the status of the EPO at the time of seizure, and that question was actually litigated in the earlier proceeding.[7]

In sum, the Court holds that collateral estoppel is properly applied in this instance. Claimant is barred from relitigating in this

6. Claimant argues that this Court should exercise its discretion and refuse to give Judge Pfaelzer's judgment preclusive effect because "the California district court failed to provide a judgment worthy of following." Claimant's Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for Summary Judgment at 31 n. 31 (Docket No. 32M). More particularly, Claimant accuses Judge Pfaelzer of failing to analyze sufficiently the testimony of a panel of experts presented by Claimant in that proceeding. Claimant's evidence of this failure is the lack of any reference to this expert testimony in the eventual decision of the court.

The Court begins with the presumption that United States District Court judges approach their work with integrity and diligence. Absent compelling evidence to the contrary, Judge Pfaelzer is entitled to the benefit of that presumption. Failure to discuss in a memorandum of decision every bit of evidence presented by litigants can be attributed to the desirable (yet rarely achieved) goals of brevity and clarity in judicial opinion writing just as easily as it might be attributed to the failure of a judge to consider evidence. Thus, the evidence offered by Claimant in support of the proposition that Judge Pfaelzer did not consider the expert testimony does not weaken the force of the presumption of diligence. Claimant's conclusion that Judge Pfaelzer was inattentive to relevant evidence is not supportable on this record.

Finally, Claimant's argument depends entirely on the proposition that consideration of the expert panel's views would have yielded a different outcome. This proposition is fundamentally flawed. For a substance to be generally recognized as safe, there must be an *expert consensus* that the substance is safe. *Weinberger v. Hynson, Westcott & Dunning, Inc.,* 412 U.S. 609, 632, 93 S.Ct. 2469, 2484, 37 L.Ed.2d 207 (1973). Evidence of a "genuine dispute among qualified experts" is "sufficient to preclude a finding of 'general recognition' of safe use." *United States v. An Article of Food,* 752 F.2d at 15 n. 6. *See also United States v. Articles of Drug,* 745 F.2d 105, 119 n. 22 (1st Cir.1984) (a difference of opinion among experts does not present a genuine issue of material fact on the question of "general recognition"), *cert. denied,* 470 U.S. 1004, 105 S.Ct. 1358, 84 L.Ed.2d 379 (1985). The evidence cited by Judge Pfaelzer in her findings of fact and conclusions of law was sufficient to demonstrate that a genuine dispute existed with respect to EPO without a discussion of the expert panel's views. Thus, her conclusion was appropriate and deserves recognition by this Court.

7. The Court need not and does not reach the question of whether a substance's legal classification can ever be changed from "unsafe food additive" to "generally recognized as safe" by the addition of new information.

Court whether EPO is an unsafe food additive susceptible to seizure and condemnation by Plaintiff. Accordingly, consistent with the findings of fact and conclusions of law in *United States v. 45/194 kg. drums ... "Pure Vegetable Oil"*, Plaintiff's motion for summary judgment will be granted with respect to the seized articles containing EPO.[8]

### C.

■ The Court notes that Claimant makes no argument in defense of the Efamol PMS capsules or the Efamax capsules, both of which contain BCO. Nonetheless, it is well established in this district that Federal Rule of Civil Procedure 56 requires the Court to examine the merits of a motion for summary judgment even though a nonmoving party has not offered an argument or evidence in opposition to the motion. *See Gagne v. Carl Bauer Schraubenfabrick*, 595 F.Supp. 1081, 1084 (D.Me.1984); *McDermott v. Lehman*, 594 F.Supp. 1315 (D.Me.1984).

■ Plaintiff offers the following uncontradicted evidence in support of its motion: (1) the Efamol PMS capsules and the Efamax capsules are intended for use as a nutritional or dietary supplement; (2) the previously identified experts (Drs. Olson, Fitzgerald, Sprecher, Vanderveen, and Irausquin) do not consider BCO to be generally recognized as safe for use as a nutritional or dietary supplement; (3) these same experts do not find that BCO has been established through scientific procedures to be safe for use as a nutritional or dietary supplement; (4) these same experts have not found published in the scientific literature sufficient information to justify approval of a food additive petition for BCO under the requirements of 21 U.S.C. section 348; and (5) there is no regulation or exemption in effect permitting the use of BCO as a food additive as required by the Act.

The Court finds that this evidence is sufficient to establish that BCO is an adulterated food additive under 21 U.S.C. sec-

tions 321(s) and 342(a)(2)(C) and, therefore, that the seized articles containing BCO are subject to condemnation pursuant to 21 U.S.C. section 334(d).

Accordingly, the Court hereby GRANTS Plaintiff's motion for summary judgment with respect to the seizure and condemnation of Defendant. The Court hereby ORDERS the condemnation and destruction of all of the articles seized by Plaintiff pursuant to the Order for Arrest of Property issued by this Court on March 31, 1988.

So ORDERED.

---

**8.** Since there is one adequate ground for granting Plaintiff's motion, the Court need not consider Plaintiff's alternative argument that the seized articles are misbranded drugs.