46 F.3d 1132
 75 A.F.T.R.2d 95-869
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Houston WILLIAMS, Plaintiff-Appellants,
v.
UNITED STATES of America, Defendant-Appellee.
 Nos. 93-5965, 93-5966.
 United States Court of Appeals, Sixth Circuit.
 Jan. 19, 1995.
 
 Before: GUY and BOGGS, Circuit Judges; and CLELAND, District Judge.*
 PER CURIAM.
 
 
 1
 Williams pleaded guilty in 1987 to conducting a gambling business. We address questions associated with a later attempt by the Internal Revenue Service (IRS) to collect gambling "excise" taxes: should Williams have been collaterally estopped from denying that he was engaged in accepting wagers during a relevant time period? Did Williams do enough to rebut the presumption of correctness afforded to IRS calculations of his gambling income?
 
 
 2
 Three years after the guilty plea, in 1990, the IRS assessed wagering taxes for Williams's illegal gambling activities from January, 1983, through October, 1986. The IRS claimed that the assessments were presumptively correct and that Williams failed to produce anything of substance to controvert them. The district court agreed with the point of view of the IRS, granted summary judgment to the United States, and dismissed Williams's cross-motion for summary judgment under 26 U.S.C. Sec. 4401. This appeal by Williams followed.
 
 I. Background
 
 3
 The facts are not disputed. In October, 1986, local and state law enforcement authorities executed a search warrant at Williams's residence. The search uncovered gambling paraphernalia, drugs, and weapons. Further investigation indicated that Williams was operating an illegal gambling business in the mid-Tennessee area. The business involved the placing of wagers, in various forms, on college and professional football games.
 
 
 4
 Williams was then charged in an information filed May 14, 1987, in the Middle District of Tennessee with one count of violating 18 U.S.C. Sec. 1955. The information stated:
 
 
 5
 From in [sic] or about 1983 through October, 1986, in the Middle District of Tennessee, HOUSTON WILLIAMS unlawfully, willfully and knowingly did conduct, finance, manage, supervise, direct, or own a part of an illegal gambling business, said illegal gambling business involving football, parlay cards, and further acted as a bookie for handling wagers on various sporting events, in violation of the laws of Tennessee, in violation of Tennessee Code Annotated 39-203.2 and 39-203.3, in which state said business was conducted. This illegal gambling business involved, during this period of time, at least five individuals who conducted, financed, managed, supervised, directed, or owned a part of said illegal gambling business, and said illegal gambling business remained in substantial continuous operation for a period of time in excess of thirty days or had a gross revenue in excess of Two Thousand Dollars ($2,000) in a single day.
 
 
 6
 In violation of Title 18, United States Code, Section 1955.
 
 
 7
 On June 8, 1987, Williams pleaded guilty to this charge.[1]
 
 
 8
 The IRS assessed against Williams wagering taxes in the amount of $36,685 for his illegal gambling activities and a 50% penalty for fraud ($18,343) on the above underpayment pursuant to 26 U.S.C. Sec. 6653(b). Because Williams failed to maintain records of the gross wagers he accepted, the IRS calculated the amounts of wagering taxes and penalties attributable to Williams's operation from the records confiscated during the October, 1986, search of Williams's residence. These records provided an account of Williams's wagering activities for the week preceding the search. Since these were the only records available, the IRS determined Williams's wagering tax liability by calculating the daily average of the total wagers accepted by Williams during this 7-day period. The daily average figure was then multiplied by the number of days in each month for which football game wagering was possible--that is, the number of days during each month that professional and college football games were played. These monthly totals were then multiplied by the applicable tax rate (2%) and penalty rate (50% of the tax imposed). A separate calculation was made for each monthly period covered by Williams's guilty plea.
 
 
 9
 In November, 1990, Williams filed an administrative claim for refund of $544 in wagering taxes paid by him for the month of January, 1983. The IRS did not act on Williams's refund claim.
 
 
 10
 In May, 1992, Williams filed a refund action in the district court seeking recovery of the above amount. The IRS counterclaimed for the balance of the assessments against Williams (totalling $53,706 in wagering taxes of $35,363.87 and penalties of $18,342.59) for his gambling activities from January, 1983, through October, 1986.[2]
 
 
 11
 The parties filed cross-motions for summary judgment. The IRS argued that Williams, by virtue of his guilty plea to violating 18 U.S.C. Sec. 1955, was collaterally estopped from denying that he was engaged in the business of accepting wagers from January, 1983, through October, 1986, within the meaning of 26 U.S.C. Sec. 4401. The IRS further contended that the assessments were presumptively correct and that Williams failed to offer any evidence to rebut them, given Williams's failure to produce any records evidencing the amount of wagering activities conducted during the relevant time frame.
 
 
 12
 Williams, on the other hand, contended that collateral estoppel should not apply. He argued that the record was insufficient to show that he accepted any taxable wagers, and that neither the period covered by the tax, nor the amount of tax, constituted elements of the offense to which he pleaded guilty in 1987. Williams also asserted that the IRS lacked sufficient basis for calculating the taxes and penalties included in the assessments.
 
 
 13
 After hearing oral argument on the respective motions, the district court agreed with the IRS. The district court rejected Williams's argument that he was "not responsible for the taxes assessed against him." The court concluded that his guilty plea to "violating anti-gambling laws" estopped Williams "from asserting any privilege" with respect to this conviction in a subsequent civil action.[3] The court further concluded that the IRS was entitled to the fraud penalty provision under 26 U.S.C. Sec. 6653(b).
 
 
 14
 Accordingly, the district court granted the IRS motion for summary judgment and entered judgment in favor of the United States and against Williams in the amount of $53,706 in taxes and penalties, plus statutory interest. This appeal followed.
 
 II. Collateral Estoppel
 
 15
 The first question we consider is whether the district court erred in collaterally estopping Williams from denying liability under 26 U.S.C. Sec. 4401 based on his plea of guilty to violating 18 U.S.C. Sec. 1955.
 
 A. Standard of review
 
 16
 The IRS suggests that de novo review is appropriate because this appeal involves review of a grant of summary judgment in favor of defendant IRS. However, since the specific issue raised here is whether collateral estoppel was properly applied, review is de novo based on the legal question presented. United States v. Sandoz Pharmaceuticals Corp., 894 F.2d 825, 826 (6th Cir.1990) ("The availability of collateral estoppel is a mixed question of law and fact which we review de novo."), cert. denied, 498 U.S. 810 (1990).
 
 B. Discussion
 
 17
 The doctrine of collateral estoppel is properly applied where the following four criteria are satisfied:
 
 
 18
 (1) the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding;
 
 
 19
 (2) determination of the issue must have been necessary to the outcome of the prior proceeding;
 
 
 20
 (3) the prior proceeding must have resulted in a final judgment on the merits; and
 
 
 21
 (4) the party against whom estoppel is sought must have had full and fair opportunity to litigate the issue in the prior proceeding.
 
 
 22
 Sandoz Pharmaceuticals, 894 F.2d at 826-27.
 
 
 23
 Williams pleaded guilty to the crime of conducting, financing, managing, supervising, directing, or owning all or part of an illegal gambling business. 18 U.S.C. Sec. 1955. Under the statute, " 'gambling' includes but is not limited to pool-selling, bookmaking, maintaining slot machines, roulette wheels or dice tables, and conducting lotteries, policy, bolita or numbers games, or selling chances therein." 18 U.S.C. Sec. 1955(b)(2).
 
 
 24
 Williams filed suit pursuant to 26 U.S.C. Sec. 7422 for refund of taxes paid under government authority of 26 U.S.C. Sec. 4401. The section under which the government exerted its power to collect taxes provides for imposition of a 2 percent excise tax on any illegal wagers received. 26 U.S.C. Sec. 4401(a)(2). It further provides that "[e]ach person who is engaged in the business of accepting wagers shall be liable for and shall pay tax under this subchapter on all wagers placed with him." 26 U.S.C. Sec. 4401(c).
 
 
 25
 In written form, Williams's argument appeared to be that although the factual predicates of the two offenses are the same, the legal issue of liability in the civil case is distinct from that in the criminal case. This distinction rests, Williams argues, on the fact that the fines imposed upon him are the result of month-by-month calculations from 1983 through October, 1986. Williams purports to contrast the situations by emphasizing that he pleaded guilty to only one violation, while the calculation of fines on a monthly basis evidences liability for multiple crimes. This argument is without merit.
 
 
 26
 The method of calculating the amount of wagers accepted[4] is relevant, as stated below, to the second issue, not this issue. The government was clearly within its power to charge Williams with one violation of the statute for an ongoing business spanning three years. 18 U.S.C. Sec. 1955(a) and (b)(1)(iii); United States v. Bennett, 623 F.2d 52, 54 (8th Cir.1980); United States v. Cooper, 966 F.2d 936, 943 (5th Cir.1992) (distinguishing the crime of making a building available for unlawful distribution of cocaine for which individual counts were appropriate for each time the building was used from Sec. 1955 cases where there can be one ongoing business over a period of time), cert. denied, 113 S.Ct. 481 (1992). We are not persuaded by Williams's attempt to deny liability based essentially upon the government's lenity in choosing to charge him with one violation without scrutiny as to whether separate businesses existed, and thus, whether separate counts based on, e.g., different sporting seasons, would be appropriate.[5] See United States v. Smaldone, 485 F.2d 1333, 1339 (10th Cir.1973) ("Because of the seasonal nature of sporting events the indictment was divided into two counts"), cert. denied, 416 U.S. 917 (1974), and cert. denied, 416 U.S. 936 (1974); United States v. Carrozza, 728 F.Supp. 266, 274-75 (S.D.N.Y.1990) (finding no multiplicity of counts where defendant was charged with one count of numbers gambling and one of sports gambling because each involved different factual scenarios), aff'd, 956 F.2d 1160 (2d Cir.1992) (Table).[6]
 
 
 27
 At oral argument, however, Williams's counsel stated that he is not contending that he accepted no wagers. From the inception of this case, the government has sought to estop Williams only from denying that he accepted wagers, not from arguing the amount of the wagers accepted.
 
 
 28
 In other words, through counsel, Williams has conceded collateral estoppel to the full extent that the government seeks to invoke it. United States v. Johnson, 752 F.2d 206, 210-11 (6th Cir.1985) ("Statements of an attorney that are directly related to the litigation at hand have been held to be within the attorney's scope of authority and binding on the client."). Thus, Issue I seems more indicative of a misunderstanding of the positions of the parties rather than a contested issue.[7]
 
 
 29
 Even if Williams did not concede this issue, the result would be the same. At first glance, the precise issue raised in the instant case does not appear to have been raised and litigated in the prior proceeding during which Williams pleaded guilty. Sandoz Pharmaceuticals, 894 F.2d at 826-27. Williams pleaded guilty to illegal gambling under 18 U.S.C. Sec. 1955, but did not plead guilty to failing to pay taxes on any wagers accepted while conducting the illegal gambling business. However, since liability for excise taxes under Sec. 4401 arises the moment illegal wagers are received, the precise issue of liability for excise taxes was raised and fully litigated via Williams's plea. Tyler v. United States, 397 F.2d 565, 567 (5th Cir.1968) (indictment charging that wagers were accepted sufficiently states tax liability for wagers placed with defendant), cert. denied, 394 U.S. 917. The amount of liability, beyond any statutory minimum amount, was not raised and litigated under the criminal plea. However, Williams's challenge as to the amount of liability is relevant not to this issue, but the next.
 
 III. Presumption of correctness
 
 30
 The second issue on appeal is whether the district court erred in determining that Williams failed to rebut the presumption of correctness afforded the government's assessment of federal excise tax pursuant to 26 U.S.C. Sec. 4401 and the fraud penalty pursuant to 26 U.S.C. Sec. 6653(b)?
 
 A. Standard of review
 
 31
 In determining whether the presumption has been rebutted, factual issues will be reviewed for clear error. Liddy v. Commissioner, 808 F.2d 312, 315 (4th Cir.1986). Where a mere general denial of correctness is offered, without supporting documentary evidence, the finding of failure to rebut is one made as a matter of law, and thus, can be reviewed de novo. Id.
 
 B. Discussion
 
 32
 Williams argues that since the methods used to determine income and excise taxes were inconsistent, the court could not have found both to be presumptively correct. However, the issue of income tax liability was not before the court nor is it a part of this appeal. Plaintiff entered into a stipulation with defendant regarding the amount of income tax due in April of 1992.[8] Since the two differing calculations were not before the court,[9] the court could not have found them both presumptively correct, nor could the court have erred in failing to note their inconsistency.[10] Williams has offered no alternative means for calculating the amount of liability that he would find satisfactory. Williams's general denial of the accuracy of the assessment is insufficient to rebut the presumption of correctness as a matter of law. Liddy, 808 F.2d at 315.
 
 
 33
 Williams's sole argument with regard to the fraud penalty is that if the amount of the tax deficiency is incorrect, then the amount of the penalty also must be incorrect.[11] As the IRS notes, although Williams has also paid $777 of the fraud penalty, he did not seek a refund of that $777 in this action.[12] This court cannot afford relief where it was not sought in the district court. Brunet v. City of Columbus, 1 F.3d 390, 402 (6th Cir.1993) (issue not raised in district court is not appealable), (citing Boyd v. Ford Motor Co., 948 F.2d 283, 284 (6th Cir.1991)), cert. denied, 114 S.Ct. 1190. Even if it could, the amount of the fraud penalty is statutorily tied to the amount of underpayment, which, in this case, is the amount of excise taxes. 26 U.S.C. Sec. 6653(b). Having failed to rebut the presumption of correctness as to the amount of liability for excise taxes, Williams has also failed to successfully challenge the amount of penalty imposed.[13]
 
 IV. Conclusion
 
 34
 Because Williams had pleaded guilty to conducting an illegal gambling business during the period for which excise taxes were imposed, the district court did not err in applying collateral estoppel to preclude Williams from denying that he accepted wagers during that same period. He was thus properly found liable for such taxes. As to the amount of excise tax liability owed, Williams failed to rebut the presumption of correctness afforded the government's assessment. Accordingly, the judgment of the district court is AFFIRMED.
 
 
 
 *
 The Honorable Robert H. Cleland, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 The information also charged appellant with one count of possession of firearms by a convicted felon, to which he also pleaded guilty
 
 
 [2]
 In addition to the $544 in tax, appellant had also paid $777 of the fraud penalty. Appellant did not seek a refund of that $777 in this action
 
 
 [3]
 The Fifth Amendment issue was resolved by appellant's decision to respond to interrogatories and thus to waive any privilege. Although the judge's memorandum does not mention collateral estoppel, he states that his decision is made "in light of the foregoing and upon review of the record in this case and the arguments of counsel" and defense counsel argued for application of collateral estoppel. Furthermore, since civil liability could not be established in any other way, the judge must have at least implicitly relied on the doctrine of collateral estoppel
 
 
 [4]
 There is no contention in the instant case that appellant's business did not meet the statutory minimum amounts
 
 
 [5]
 Gambling occurring over the course of a sporting season would likely be a business operated for a period in excess of thirty days under 18 U.S.C. Sec. 1955(b)(1)(iii), giving rise to criminal liability
 
 
 [6]
 Since "[i]t is not always easy to ascertain whether one or more gambling businesses have been proven under Sec. 1955," the government's choice to charge only one count of operating an illegal gambling business, without further probing, is understandable. Bennett, 623 F.2d at 54
 
 
 [7]
 Appellant's misunderstanding is further indicated by his inclusion, under collateral estoppel, of the claim that the amount of wagering alleged in the information was "ballooned out of proportion." This is an argument pertaining to the quantification of liability, not its propriety
 
 
 [8]
 Appellant mischaracterizes this stipulation as a "Decision" in his motion to supplement the record
 
 
 [9]
 The court's opinion was entered in April of 1993 and discussed only excise taxes, not income tax
 
 
 [10]
 Whether Agent Baylon's calculations were inconsistent or not is beyond the purview of this appeal
 
 
 [11]
 This is consistent with plaintiff's position under this issue which speaks of excise tax liability "with the attendant fraud penalty."
 
 
 [12]
 In plaintiff's request for an injunction, plaintiff speaks of "taxes, penalty and interest" but there is no reference to the penalty, either in amount or by label, in the request for refund
 
 
 [13]
 Appellant's concern as to the fraud penalty regarded solely the amount of the penalty. Appellant does not argue, and this court does not decide, whether the imposition of the fraud penalty in any amount is appropriate on the instant facts