**DETROIT POLICE OFFICERS ASSOCIATION, a Voluntary Mutual Benefit Association, Labor Organization, Plaintiffs-Appellants,**

v.

**Coleman A. YOUNG, Mayor of the City of Detroit, et al., Defendants-Appellees,**

**William MORGAN, Brian Brunett, and Donald Prince, individually and as representatives of a class, Plaintiffs-Appellants,**

v.

**Coleman A. YOUNG, Mayor of the City of Detroit, et al., Defendants-Appellees.**

**No. 85–1120.**

United States Court of Appeals, Sixth Circuit.

Argued Nov. 20, 1986.

Decided July 29, 1987.

---

Walter S. Nussbaum (argued), John F. Brady, Detroit, Mich., Thomas Brady (argued), for plaintiffs-appellants.

Barry Goldstein (argued), Washington, D.C., James R. Andary, Frank W. Jackson, III, Detroit, Mich., for defendants-appellees.

Before MERRITT, WELLFORD and NORRIS, Circuit Judges.

MERRITT, Circuit Judge.

In this suit by white police officers challenging the Detroit Police Department's affirmative action plan, the officers appeal from the District Court's grant of summary judgment in favor of the City which was based upon principles of collateral estoppel and *stare decisis*. Although we agree with the District Court that relitigation of the issue of the City's general past discrimination should be barred by principles of collateral estoppel, we disagree with the lower court's determination that judicial review of the reasonableness of the remedy should also be barred. Accordingly, we reverse the District Court's grant of summary judgment.

## I.

In 1968, the Detroit Police Department began to take concrete measures to remedy the effects of past discrimination in its police force. The initial step taken by the City was to institute a major recruitment effort to encourage blacks and other minority candidates to join the force. This effort has been successful and has resulted in a significant increase in the percentage of black officers at the patrol level.

In 1974, the police department took a second step towards affirmative action when it instituted a plan which gives black officers preference in the promotional process for the supervisory positions of sergeant and lieutenant. The plan provides for a 50/50 ratio of white to black male officers promoted to both sergeant and lieutenant. As a result of the affirmative action plan, white patrolmen who would have been promoted in the normal course of events have sometimes been passed over for promotions.

Specifically, under the plan, all candidates for promotion in the Detroit Police Department are ranked according to their promotional score. The promotional score is a numerical rating based upon a written exam, service ratings, an oral interview, seniority, veteran's points and higher education. Prior to the institution of the affirmative action plan, all promotions were made in rank order. The affirmative action plan provides that candidates are coded according to race and sex. Black and white male officers are then promoted in equal numbers. Female officers are treated separately and are also given promotional preference.[1]

This suit was brought by white patrolmen challenging the preference given to black patrolmen in the initial promotion to sergeant. The case has been before this Court before. In the original trial, the District Court found that the patrolman-sergeant element of the plan violated the Equal Protection Clause of the Fourteenth Amendment and Title VII of the Civil Rights Act of 1964. *See DPOA v. Young,* 446 F.Supp. 979 (E.D.Mich.1978). This Court reversed. We held that the plan was valid under applicable federal statutes and remanded for further consideration of the constitutional issues. *See DPOA v. Young,* 608 F.2d 671 (6th Cir.1979).

This Court asked the District Court to reconsider four specific issues on remand:

(1) "whether it has been established that the Department engaged in intentional discrimination against blacks";

(2) "if not, whether the affirmative action plan is justified under the alternative claim of operational needs";

(3) if the Department's prior intentional discrimination mandates affirmative action, "whether the affirmative action plan, with its 50/50 ratio, was a reasonable remedial response"; and

(4) if the affirmative action plan is to remain in force, the proper formula for its eventual termination.[2]

See *DPOA v. Young,* 608 F.2d at 697–98.

In the interim between the remand by the Sixth Circuit and the District Court's grant of summary judgment in favor of the City, this Court decided the *Bratton* case which upheld the validity of a similar preference given to black sergeants seeking promotion to lieutenant against attacks under Title VII, 42 U.S.C. § 1983, and the Fourteenth Amendment to the United States Constitution. *See Bratton,* 704 F.2d 878 (6th Cir.1983). In the present case, the District Court held that our decision in *Bratton* upholding the sergeant-lieutenant promotional preference precluded it from

---

1. For complete discussions of the details of the affirmative action plan, see *Bratton v. City of Detroit,* 704 F.2d 878 (6th Cir.), *modified,* 712 F.2d 222 (6th Cir.1983), *aff'g Baker v. City of Detroit,* 504 F.Supp. 841 (E.D.Mich.1980), *modifying* 483 F.Supp. 930 (E.D.Mich.1979), *cert. denied,* 464 U.S. 1040, 104 S.Ct. 703, 79 L.Ed.2d 168 (1984); *Detroit Police Officers Ass'n v. Young,* 608 F.2d 671 (6th Cir.1979), *rev'g* 446

F.Supp. 979 (E.D.Mich.1978), *cert. denied,* 452 U.S. 938, 101 S.Ct. 3079, 69 L.Ed.2d 951 (1981).

2. After the decision in *DPOA v. Young* was issued, the Detroit Police Commission determined that, in its opinion, the termination point for the plan should be a 50 percent ratio of black to white sergeants. The issue before us is whether this termination point is reasonable.

determining the constitutionality of a similar preference at the patrolman-sergeant level. Accordingly, the District Court applied principles of collateral estoppel and *stare decisis* to grant summary judgment in favor of the City.

## II.

■ Before the collateral estoppel doctrine may be applied to preclude further judicial review of an issue, four basic criteria must be met:

(1) the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding;[3]

(2) determination of the issue must have been necessary to the outcome of the prior proceeding;[4]

(3) the prior proceeding must have resulted in a final judgment on the merits;[5] and

(4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding.[6]

Moreover, even when these criteria are met, collateral estoppel may not be invoked where controlling facts or legal principles have changed significantly, or where the circumstances of the case justify an exception to general estoppel principles. *See Montana v. United States*, 440 U.S. 147, 157–58, 162, 99 S.Ct. 970, 975–76, 978, 59 L.Ed.2d 210 (1979); *Commissioner v. Sunnen*, 333 U.S. 591, 600, 68 S.Ct. 715, 720–21, 92 L.Ed. 898 (1948).

In this case, the District Court applied estoppel principles to preclude further review of all the issues remanded to it by this Court. These issues can be grouped together into two basic categories. First, we asked the District Court to consider the general question of whether either past intentional discrimination by the City of Detroit's police force or its operational needs constituted a sufficient justification for its institution of the affirmative action plan. Second, we asked the District Court to consider the more specific question of the reasonableness of the remedy at issue in this case—the 50/50 promotional ratio from patrolman to sergeant and the use of a 50/50 ratio as the reasonable termination point for this plan.

■ The issue of whether the City of Detroit's police department engaged in intentional discrimination against its black officers, sufficient to justify the imposition of some form of voluntary affirmative action to remedy this past discrimination, was litigated and decided by *Bratton*. In determining the constitutionality of a *voluntary* affirmative action plan, it is not necessary that there be a *judicial* finding of past intentional discrimination, when such a finding has been made by an authority competent in the area. *See Bratton*, 704 F.2d at 886–90. In *Bratton*, this Court specifically upheld Judge Keith's finding that the Detroit Police Commission's determination that the police department had engaged in past intentional discrimination was sufficient to uphold the plan against constitutional attack. *See id.* at 888–90. Therefore, the question of whether the City's past discrimination constituted a sufficient basis for the institution of some form of affirmative relief was: (1) at issue in *Bratton*, (2) necessary to the outcome in *Bratton*, and (3) decided by *Bratton*.

The remaining unanswered question is whether the patrolman class against whom estoppel is sought in this case had a "full and fair opportunity to litigate" the issue in

---

**3.** *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 (1979); *Blonder-Tongue Laboratories, Inc. v. University of Illinois Found.*, 402 U.S. 313, 323, 91 S.Ct. 1434, 1440, 28 L.Ed.2d 788 (1971); *United States v. Smith*, 730 F.2d 1052, 1057 (6th Cir.1984); *Spilman v. Harley*, 656 F.2d 224, 228 (6th Cir.1981).

**4.** *See Parklane Hosiery*, 439 U.S. at 326 n. 5, 99 S.Ct. at 649 n. 5; *Smith*, 730 F.2d at 1057; *Spilman*, 656 F.2d at 228.

**5.** *See Blonder-Tongue Laboratories*, 402 U.S. at 323, 91 S.Ct. at 1440; *Smith*, 730 F.2d at 1057.

**6.** *See Haring v. Prosise*, 462 U.S. 306, 313, 103 S.Ct. 2368, 2373, 76 L.Ed.2d 595 (1983); *Allen v. McCurry*, 449 U.S. 90, 95, 101, 101 S.Ct. 411, 418, 66 L.Ed.2d 308 (1980); *see generally* Restatement (Second) of Judgments § 29 (1982).

the prior proceeding. *See Haring*, 462 U.S. at 313, 103 S.Ct. at 2373. The answer to this question turns on whether the interests of the sergeant class in *Bratton*, and the patrolman class in this case, are so similar that this patrolman class was sufficiently represented by the sergeant class. Only then would it be fair to the patrolman class to estop relitigation of the general issue of the City's past discrimination.

In the earlier *Bratton* litigation, Judge Keith certified the plaintiff class as follows:

> All past, present and future qualified white male police sergeants who since November 1974 have been or will be denied because of their race to be timely promoted to the rank of lieutenant.

*Baker v. City of Detroit*, 483 F.Supp. 930, 938 (E.D.Mich.1979).

In this case, Judge Kaess certified the following class:

> All past, present and future qualified white Detroit Police Officers below the rank of Sergeant who, since April of 1974, have been or will be denied, because they are white, their timely promotions to the rank of Sergeant.

*DPOA v. Young*, 446 F.Supp. 979, 986 (E.D.Mich.1978).

■ It should be noted at the outset that although the classes are clearly not identical, identity between the classes is not necessary where there is a "strong community of interests" between two sets of plaintiffs. *See DPOA v. Young*, 36 Empl.Prac.Dec. (CCH) ¶ 35,094 (E.D.Mich.1984) (citing *Bronson v. Board of Educ.*, 525 F.2d 344, 349 (6th Cir.1975), *cert. denied*, 425 U.S. 934, 96 S.Ct. 1665, 48 L.Ed.2d 175 (1976)). In *Bronson*, this Court held that a 1965 decision in the Cincinnati school desegregation case precluded the reconsideration of the issues actually considered and decided earlier, specifically pre–1965 segregative intent. The decision was based on a finding that the class was adequately represented in the prior case. The Court concluded that "a public body should not be required to defend repeatedly against the *same* charge of improper conduct if it has been vindicated in an action brought by a

person or group who *validly and fairly represent* those whose rights are alleged to have been infringed." 525 F.2d at 349 (emphasis added).

In determining that the *Bronson* class had been validly and fairly represented in the prior litigation, the Court looked to the similarity between the classes and the commonality of their interests. The Court was careful to preclude only relitigation of those specific issues that had, in fact, been determined in the prior litigation. The *Bronson* reasoning and result was followed in *Bell v. Board of Education*, 683 F.2d 963 (6th Cir.1982)(using collateral estoppel principles to bar relitigation of segregative intent).

■ The District Court applied the *Bronson* analysis in determining that the patrolman class in this case was adequately represented by the sergeant class in *Bratton*. *See DPOA v. Young*, 36 Empl.Prac. Dec. (CCH) ¶ 35,094 (E.D.Mich.1984). The lower court reasoned that the significant overlap between the plaintiff classes in the two cases and the strong community of their interests was sufficient to hold that the current plaintiffs were adequately represented by the *Bratton* class.

As to the general question of the City's past discrimination, the interest of this plaintiff class is directly analogous to that of the *Bratton* class. In both cases, to prevail the plaintiffs had to prove that the City's own determination that it had engaged in past discrimination was so flawed as to make its institution of a *voluntary* affirmative action plan unconstitutional. That exact issue was decided in the negative by *Bratton*. Therefore, there is a "strong community of interests" between the classes. Moreover, there is overlap in membership between the classes. In fact, the three named plaintiffs in this case were also members of the *Bratton* class. In total, approximately two hundred officers are members of both classes. *See DPOA v. Young*, 36 Empl.Prac.Dec. (CCH) ¶ 35,-094 (E.D.Mich.1984). For these reasons, we agree with the District Court that the representation of the patrolman class in the *Bratton* litigation was adequate to make

application of collateral estoppel proper for the specific issues that were, in fact, decided by *Bratton*.

This reasoning precludes further judicial review of the general issue of whether past intentional discrimination by the City permits some form of voluntary affirmative action by the police department. Judge Keith, in a thorough 73 page opinion, decided that precise issue. *See Baker*, 483 F.Supp. 930 (E.D.Mich.1979). The Sixth Circuit specifically upheld this finding. *See Bratton*, 704 F.2d at 888–89. We, therefore, conclude that collateral estoppel principles properly preclude further review of this question.

■ The District Court, however, went on to find that collateral estoppel and *stare decisis* also preclude further review of the more specific question of the reasonableness of the particular remedy imposed by the City which is challenged in this case— use of a 50/50 white to black promotion ratio from patrolman to sergeant and the use of 50 percent black representation in the sergeant class as a reasonable termination point for the plan. This issue was neither litigated nor decided by *Bratton*. The *Bratton* case concerned another element of the plan, that is, the promotional preference given to black sergeants in their bid for lieutenant. The reasonableness of one affirmative action remedy by an employer is not determinative of the reasonableness of a *different* remedy.

These plaintiffs would like the opportunity to show that affirmative action is unreasonable in the promotion from patrolman to sergeant because past discrimination no longer influences this promotion. Proof relevant to this determination, for example, may include statistics as to the percentage of blacks in the patrolman pool compared to the number that would be there but for the City's past discrimination, and the content validity of the current sergeant's examination. Moreover, the question of whether a 50 percent termination point is reasonable at the lieutenant level is not precisely the same issue as whether a 50 percent termination point is unreasonable at the sergeant level. This plaintiff class

should, therefore, be permitted to present evidence and have a judicial determination that *this* remedy meets constitutional muster.

Our decision here is similar to *NAACP v. Detroit Police Officers Ass'n*, 821 F.2d 328 (6th Cir.1987). In that case, the City of Detroit and the police officers' union argued that principles of collateral estoppel should *not* bar litigation of the constitutionality of recent layoffs made by the Detroit Police Department. Although we suggested that collateral estoppel would bar relitigation of the general facts of past discrimination which were demonstrated and conceded by the City in *Bratton*, we held that it was improper for the District Court to rely on these findings as a sufficient predicate to impose a court-ordered remedy modifying the voluntary affirmative action plan to disallow future layoffs.

Applying this analysis to the facts of this case, we hold that it was proper for the District Court to collaterally estop the plaintiffs from relitigating the general question of whether the City's past intentional discrimination constituted a sufficient basis for the institution of some affirmative action. This was decided by *Bratton*. However, we disagree with the District Court's determination that principles of collateral estoppel and *stare decisis* should also preclude judicial review of the reasonableness of this remedy. That issue was neither litigated nor decided by *Bratton*.

Accordingly, we reverse and remand for further proceedings consistent with this opinion.