980 F.2d 730
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
PAN AMERICAN PHARMACEUTICALS, INC., and Dan Lee, Plaintiffs-Appellees,
v.
Ken SHELIN and Wendy Gould, Defendants-Appellees.
PAN AMERICAN PHARMACEUTICALS, INC., and Dan Lee, Plaintiffs-Appellants,
v.
David A. KESSLER, Gerald Guest, Ed Ballitch, Ken Shelin and
Wendy Gould, Defendants-Appellees.
 Nos. 91-1837, 91-1839.
 United States Court of Appeals, Sixth Circuit.
 Dec. 3, 1992.
 
 Before NATHANIEL R. JONES, BOGGS and ALAN E. NORRIS, Circuit Judges.
 BOGGS, Circuit Judge.
 
 
 1
 Pan American Pharmaceuticals, Inc. and Dan Lee seek damages and equitable relief based upon actions allegedly taken by officials of the Food and Drug Administration. They accuse the officials of selectively enforcing drug laws and harassing their customers and suppliers. The district court rejected these claims, and the plaintiffs appeal to this court. We affirm.
 
 
 2
 * The plaintiffs, Pan American and Mr. Lee, the president of Pan American, sell animal drugs from their plant in Grand Rapids, Michigan. In 1990, the United States sought an injunction against the plaintiffs pursuant to the Food, Drug, and Cosmetic Act (FDCA), 21 U.S.C. § 332(a), on the grounds that they had violated the FDCA by introducing adulterated and misbranded animal drugs into interstate commerce and by adulterating and misbranding animal drugs while they were held for sale. In support of its motion for summary judgment, the government presented evidence that Pan American was selling new animal drugs that had not been approved by the Food and Drug Administration, and were thus deemed unsafe as a matter of law. 21 U.S.C. §§ 351(a)(5), 360b(a)(1)(A). The government also submitted evidence demonstrating that one of the drugs was misbranded, in violation of 21 U.S.C. § 352(f)(1), and that Pan American had introduced the products in question into interstate commerce, thus violating 21 U.S.C. § 331(k).
 
 
 3
 In response, Pan American and Mr. Lee did not address the government's assertions directly. Instead, they maintained that the local FDA enforcement officer was pursuing a campaign of "harassment, intimidation and vindictiveness against Pan American. United States v. Pan Am. Pharmaceuticals, Inc., No. 1:89-CV-917, slip op. at 8, 1990 U.S.Dist. LEXIS 12275 (W.D.Mich. Sept. 13, 1990). Specifically, they asserted that issues of material fact existed that could be demonstrated through discovery; that the statute of limitations, laches, estoppel, and mootness prevented the suit in question; and that the government violated their rights to due process and equal protection by selectively prosecuting them.
 
 
 4
 The district court rejected these arguments and granted the government's request for an injunction. In discussing the selective prosecution argument, the court noted that
 
 
 5
 [D]efendants have not alleged that they are similarly situated to a specific animal drug manufacturer and distributor that has not been the subject of an enforcement action. While defendants have identified other companies marketing single products identical to their own, they have not identified another company which has manufactured and distributed a collection of products like Pan American's.
 
 
 6
 Slip op. at 13. The district court also noted that Pan American and Mr. Lee had failed to present "evidence which shows that the government acted invidiously or in bad faith." Slip op. at 14. Instead, it determined that the defendants had only presented "conclusory allegations" that do not "entitle defendants to defeat this summary judgment motion by claiming that discovery will develop genuine issues of material fact." Ibid. An appeal from this decision, Case No. 91-1426, was eventually dismissed by order of this court on September 25, 1991.
 
 
 7
 On December 18, 1990, Pan American and Mr. Lee (hereinafter referred to as the plaintiffs) filed two complaints in federal district court against various officials working for the FDA. In one complaint, Pan Am. Pharmaceuticals, Inc. v. Shelin, Case No. 1:90-CV-1062 (W.D.Mich.), the plaintiffs sought damages from Ken Shelin, the FDA District Enforcement Director in Detroit, and Wendy Gould, an FDA inspector. The plaintiffs alleged that the defendants had selectively enforced the FDCA in order to drive Pan American out of business. They also asserted that the defendants had "caused agents to contact Plaintiffs' suppliers and customers to try to persuade and threaten them not to do business with Plaintiffs, less [sic] they face unlawful enforcement sanctions."
 
 
 8
 In the other complaint, Pan Am. Pharmaceuticals, Inc. v. Kessler, Case No. 1:90-CV-1063 (W.D.Mich.1991), the plaintiffs sought various forms of equitable relief against David Kessler, the Commissioner of the FDA; Gerald Guest, the Director of the Center for Veterinary Medicine; Ed Ballitch, the Director of Surveillance and Compliance in the Center for Veterinary Medicine of the FDA; Mr. Shelin; and Ms. Gould. The plaintiffs requested (1) a writ of mandamus requiring the defendants to enforce the pre-approval provisions for new animal drugs against all violators; (2) an injunction prohibiting the defendants from applying the FDCA against anyone unless it was enforced against all violators; (3) an order enjoining the defendants from harassing the plaintiffs' manufacturers, suppliers, and customers; and (4) declaratory relief as to whether the defendants could invidiously apply the FDCA only against the plaintiffs.
 
 
 9
 The plaintiffs contended that although new animal drugs must be approved by the FDA before distribution in interstate commerce, only a small percentage of animal drugs currently in the market have received FDA approval. However, while the FDA has brought numerous enforcement actions against Pan American, it has failed to do so against identical products manufactured or sold by other companies. Thus, the plaintiffs contend that the defendants were more interested in injuring Pan American than in protecting public health.
 
 
 10
 To support these claims, Mr. Lee submitted several affidavits, all from himself, describing unethical actions by FDA officials. He asserted that John Dunn, an FDA inspector, had told him that Mr. Shelin, the FDA's enforcement director, wanted to hurt his business. Mr. Dunn eventually left the FDA and went to work for Pan American. However, Mr. Lee claimed that Mr. Dunn used Pan American's facilities to manufacture competing products, and stole its trade secrets. Mr. Dunn was also a friend of Ms. Gould, the FDA inspector responsible for Pan American. According to Mr. Lee, Ms. Gould said that he would not have troubles with the FDA if not for his conflict with Mr. Dunn. Mr. Lee also stated that FDA field agents harassed those who dealt with him; for example, agents allegedly told one supplier that he would have his own FDA problems if he continued to sell to Pan American.
 
 
 11
 Although the same district judge heard both cases, they were decided separately. In Case No. 1:90-CV-1062, the suit for damages, the district court granted the defendants' motion for summary judgment on April 5, 1991. It held that any action for damages due to selective enforcement was barred by the doctrine of collateral estoppel, as this issue had already been decided against the plaintiffs in the 1990 enforcement action brought by the United States. The court dismissed the plaintiffs' harassment claim on the grounds that although it was actually a tort claim, the plaintiffs had failed to exhaust their administrative remedies as required by the Federal Tort Claims Act, 28 U.S.C. § 2675, and therefore the court lacked jurisdiction over their claim.
 
 
 12
 In Case No. 1:90-CV-1063, the suit for equitable remedies, the district court dismissed much of the case for failure to state a claim, on March 4, 1991. It held that because decisions on whether or not to enforce the FDCA are committed to the discretion of the FDA, it lacked jurisdiction over such issues. It also concluded that the plaintiffs' equitable claims that were premised upon the FDA's selective enforcement of the FDCA were barred by collateral estoppel. The court relied on these two independent arguments to find that it lacked jurisdiction over all of the plaintiffs' equitable claims, other than their claim that the defendants had harassed Pan American's customers and suppliers. It concluded that further briefing was necessary before it could judge the harassment claim. In their attempt to overcome the defendants' motion for summary judgment on the harassment claim, the plaintiffs submitted a number of affidavits by Mr. Lee. However, the district court held that these affidavits did not aid the plaintiffs, for "[w]hen the hearsay and opinion statements are disregarded the affidavits are devoid of specific information that might conceivably create a genuine issue concerning whether defendants have been harassing plaintiffs' customers and distributors." The district court also determined that the plaintiffs had failed to demonstrate that further discovery was necessary. Thus, it granted summary judgment to the defendants on the harassment claim, and dismissed the case in full. The plaintiffs appealed both cases to this court; we now consolidate them for purposes of this opinion.
 
 II
 
 13
 As noted earlier, the district court held that the plaintiffs' claims for damages and equitable relief based upon selective enforcement were barred by collateral estoppel, as the issue of selective enforcement had been determined against the plaintiffs when the United States brought its suit for an injunction. This court has held that collateral estoppel may not preclude further review of an issue unless four basic criteria have been met:
 
 
 14
 (1) the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding;
 
 
 15
 (2) determination of the issue must have been necessary to the outcome of the prior proceeding;
 
 
 16
 (3) the prior proceeding must have resulted in a final judgment on the merits; and
 
 
 17
 (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding.
 
 
 18
 Detroit Police Officers Ass'n v. Young, 824 F.2d 512, 515 (6th Cir.1987). Furthermore, "even when these criteria are met, collateral estoppel may not be invoked where controlling facts or legal principles have changed significantly, or where the circumstances of the case justify an exception to general estoppel principles." Ibid.
 
 
 19
 The plaintiffs argue that this four-part test has not been met. They argue that the selective enforcement issue was not necessary to decide the enforcement case brought by the government, as they presented their selective enforcement argument in that case solely as an affirmative defense. "[A]part from compulsory counterclaim rules, the traditional conclusion has been that purely defensive use of a theory does not preclude a later action for affirmative recovery on the same theory." Schneider v. Colegio de Abogados de Puerto Rico, 546 F.Supp. 1251, 1272 (D.P.R.1982). Furthermore, they contend that the selective enforcement issue was not dispositive, and that the district court's decision to issue the injunction rested on several independent grounds. "[W]here the court in the prior suit has determined two issues, either of which could independently support the result, then neither determination is considered essential to the judgment. Thus, collateral estoppel will not obtain as to either determination." Ritter v. Mount St. Mary's College, 814 F.2d 986, 993 (4th Cir.), cert. denied, 484 U.S. 913, 108 S.Ct. 260 (1987).
 
 
 20
 The plaintiffs also contend that they were not given a "full and fair opportunity" to litigate their claim of selective enforcement when the district court issued an injunction against them. They argue that the specifics of the FDA's campaign of vindictiveness could have been established in the injunction case if the district court had granted their motion for discovery. "A party has not had a full and fair opportunity to litigate an issue when, 'without fault of his own the [party to be estopped] was deprived of crucial evidence or witnesses in the first litigation.' " General Dynamics Corp. v. American Tel. & Tel. Co., 650 F.Supp. 1274, 1288 (N.D.Ill.1986) (quoting Blonder-Tongue Lab, Inc. v. University of Ill. Found., 402 U.S. 313, 333, 91 S.Ct. 1434, 1445 (1971)).
 
 
 21
 The plaintiffs maintain that their allegations were serious enough to justify granting discovery in this case.
 
 
 22
 A [criminal] defendant may ... be entitled to discovery on the issue of selective prosecution if he introduces "some evidence tending to show the existence of the essential elements of the defense."
 
 
 23
 United States v. Schmucker, 815 F.2d 413, 418 (6th Cir.1987) (quoting United States v. Mitchell, 778 F.2d 1271, 1277 (7th Cir.1985), quoting United States v. Berrios, 501 F.2d 1207, 1211 (2d Cir.1974)). In this case, they argue that Mr. Lee's affidavits, along with a 1985 Congressional report indicating that a high percentage of new animal drugs are being marketed in violation of the FDCA, entitle them to discovery.
 
 
 24
 We hold that collateral estoppel is appropriate in this case. The plaintiffs do not seriously dispute that the selective enforcement issue was actually litigated in the injunction proceeding, nor do they deny that the earlier case resulted in a final judgment on the merits. We have also found no evidence that the major facts or legal principles involved in the selective enforcement claim have changed significantly since the prior proceeding. Thus, we need only determine whether the issue was necessary to the outcome of the earlier case, and whether the plaintiffs had a "full and fair opportunity" to litigate the issue.
 
 
 25
 A review of the injunction case clearly reveals that the selective enforcement issue was crucial to its result. In that case, Pan American and Mr. Lee argued that "summary judgment is inappropriate as discovery will establish the truth of [their] selective prosecution defense. Once this defense is established, defendants assert that the due process clause and 'inherent equal protection safeguards' bar this action." United States v. Pan Am. Pharmaceuticals, Inc., No. 1:89-CV-917, slip op. at 12, 1990 U.S.Dist. LEXIS 12275 (W.D.Mich. Sept. 13, 1990). Thus, had the district court agreed with Pan American and Mr. Lee, it would have denied the defendants' motion for summary judgment, for they contended that the government's selective prosecution provided them with a complete defense. This court has also indicated that selective enforcement may be a defense to civil penalties. See Schehl v. Commissioner of Internal Revenue, 855 F.2d 364, 367 (6th Cir.1988). The district court's holding that Pan American and Mr. Lee had not established a selective enforcement defense, therefore, was crucial to its ultimate decision. The mere fact that the district court rejected other defenses offered by Pan American and Mr. Lee does not affect this result; the court would have denied the government's request for an injunction on the basis of the selective enforcement claim alone, if it were valid, no matter how many other defenses it rejected. Rejection of the selective enforcement defense was unnecessary to the decision in the injunction case, therefore, only if the court had ruled in favor of Pan American on a separate issue.
 
 
 26
 We also hold that the plaintiffs had a full and fair opportunity to litigate the selective enforcement issue in the injunction case. As noted earlier, the district court that issued the injunction specifically concluded that Pan American and Mr. Lee had failed to justify further discovery pursuant to Fed.R.Civ.P. 56(f). It noted that a party " 'cannot defeat a motion for summary judgment by merely restating the conclusory allegations contained in his complaint, and amplifying them only with speculation about what discovery might uncover.' " Slip op. at 14 (quoting Contemporary Mission, Inc. v. United States Postal Serv., 648 F.2d 97, 107 (2d Cir.1981)). As the district court further noted, the Second Circuit in Contemporary Mission also stated that
 
 
 27
 Something more than a fanciful allegation is required to justify denying a motion for summary judgment when the moving party has met its burden of demonstrating the absence of any genuine issue of material fact. A "bare assertion" that the evidence supporting a [party's] allegation is in the hands of [the other party] is insufficient to justify a denial of a motion for summary judgment under Rule 56(f).
 
 
 28
 Ibid. Because the district court determined that Pan American and Mr. Lee had failed to present something more than a "fanciful allegation," it held that no further discovery was necessary.
 
 
 29
 Discovery was not necessary before the district court granted summary judgment. "The fact that discovery is not complete--indeed, has not begun--need not defeat [a motion for summary judgment]." American Nurses' Ass'n v. Illinois, 783 F.2d 716, 729 (7th Cir.1986). Thus, the fact that Pan American and Mr. Lee were denied a certain amount of discovery does not mean that they lacked a full and fair opportunity to litigate their claim. In United States v. Sandoz Pharmaceuticals Corp., 894 F.2d 825 (6th Cir.), cert. denied, 111 S.Ct. 45 (1990), a drug manufacturer was estopped from litigating whether a drug seized by the government was a new drug that could not be marketed without FDA approval, because this issue had already been litigated in a prior action. See United States v. 225 Cartons, More or Less, of an Article of Drug, 687 F.Supp. 946 (D.N.J.1988), aff'd, 871 F.2d 409 (3d Cir.1989). This court specifically rejected the argument that a lack of discovery in a prior case prevented the application of collateral estoppel:
 
 
 30
 Sandoz next contends that it did not have a full and fair opportunity to litigate in New Jersey because it was denied discovery. We reject this claim.... Because Sandoz failed to identify any undiscovered essential fact ... to show that the denial of its discovery request was unfair, or to show that discovery could have led to a different result in either jurisdiction, we find that Sandoz had a full and fair opportunity to litigate in the New Jersey proceeding.
 
 
 31
 Sandoz, 894 F.2d at 828.
 
 
 32
 In each of the two cases before us, the district court specifically stated that the plaintiffs had failed to identify any undiscovered essential fact, to show that the denial of their motion for discovery in the injunction case was unfair, or to show that discovery would have led to a different result. Thus, it concluded that they had failed to distinguish their case from Sandoz. Having reviewed the record, we agree with this conclusion. This court has held that in order to obtain an evidentiary hearing on a claim of selective prosecution, a criminal defendant
 
 
 33
 "... bears the heavy burden of establishing, at least prima facie, (1) that while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and (2) that the government's discriminatory selection of him has been invidious or in bad faith, i.e., based upon such impermissible considerations as race, religion, or the desire to prevent the exercise of his constitutional rights."
 
 
 34
 United States v. Hazel, 696 F.2d 473, 474 (6th Cir.1983) (quoting United States v. Berrios, 501 F.2d 1207, 1211 (2d Cir.1974)) (emphasis added in Hazel ). Even if we were to extend the doctrine of selective prosecution to allow actions by civil plaintiffs, rather than limiting it to use as a defense by criminal defendants, the vague allegations submitted by the plaintiffs in this case do not meet the "heavy burden" described by this court in Hazel.
 
 
 35
 Thus, we hold that the plaintiffs are collaterally estopped from litigating the issue of whether the FDA and its agents selectively enforced the FDCA. We therefore affirm the district court's dismissal of their claims for equitable relief and damages based upon selective prosecution. We thus need not address the issue of whether the district court had subject matter jurisdiction over the plaintiffs' claims for equitable relief.
 
 III
 
 36
 The plaintiffs have also requested damages and equitable relief based upon their claim that FDA agents harassed their suppliers, distributors, and customers. Because this issue has not been previously litigated, these claims are not subject to collateral estoppel. We affirm the district court's ruling below in favor of the defendants on each of these claims.
 
 
 37
 In their complaint for damages, the plaintiffs asserted that "[d]efendants in furthering their unconstitutional actions have caused agents to contact Plaintiffs' suppliers and customers to try to persuade and threaten them not to do business with Plaintiffs, less [sic] they face unlawful enforcement sanctions." As noted earlier, the district court dismissed this claim because the plaintiffs had failed to exhaust their administrative remedies, as required by the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq. However, the plaintiffs maintain that their suit seeks damages for a constitutional violation by a government employee, pursuant to Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999 (1971). Because the Supreme Court recently recognized that plaintiffs bringing Bivens actions need not resort to the Federal Tort Claims Act, United States v. Smith, 111 S.Ct. 1180, 1185 (1991), the plaintiffs contend that exhaustion was unnecessary in this case. They also assert that their claim indicates that exhaustion would have been pointless. "Exceptions to the exhaustion requirement are appropriate ... where the attempt to exhaust such remedies would itself be a patently futile course of action." Hessbrook v. Lennon, 777 F.2d 999, 1003 (5th Cir.1985); see also Lyons v. United States Marshals, 840 F.2d 202, 205 (3d Cir.1988).
 
 
 38
 We reject these arguments. The plaintiffs have failed to show that their harassment claim describes a constitutional violation rather than a tort. "[A] plaintiff seeking a damages remedy under the Constitution must first demonstrate that his constitutional rights have been violated." Davis v. Passman, 442 U.S. 228, 248, 99 S.Ct. 2264, 2278 (1979). Although they contend that they were denied equal protection and due process, the plaintiffs have presented no basis for these allegations. "The equal protection concept does not duplicate common law tort liability by conflating all persons not injured into a preferred class receiving better treatment than a plaintiff who alleges tortious injury." Joyce v. Mavromatis, 783 F.2d 56, 57 (6th Cir.1986). The plaintiffs have failed to claim that they were victims of treatment on account of a suspect classification, which we have described as "an essential element of an equal protection claim." Booher v. United States Postal Serv., 843 F.2d 943, 944 (6th Cir.1988). The plaintiffs' due process claim must also fail, as they have demonstrated no recognizable liberty or property interest in which they have been deprived. Ibid.
 
 
 39
 The plaintiffs have thus failed to make a Bivens claim, and their suit for damages must be treated as a tort. Therefore, they must follow the procedures set forth in the Federal Torts Claim Act. As the Supreme Court recently noted, this Act is "the exclusive mode of recovery for the tort of a Government employee even when the [Act] itself precludes Government liability." United States v. Smith, 111 S.Ct. 1180, 1185 (1991). The plaintiffs have failed to exhaust their administrative remedies, as required by 28 U.S.C. § 2675(a), and their claim must therefore be dismissed. "Exhaustion of administrative remedies is a jurisdictional prerequisite to suit under the Tort Claims Act, and absent compliance with the statute's requirement the district court was without jurisdiction." McAfee v. 5th Circuit Judges, 884 F.2d 221, 222-23 (5th Cir.1989), cert. denied, 493 U.S. 1083, 110 S.Ct. 1141 (1990).
 
 
 40
 The plaintiffs contend that exhaustion would be pointless. However, "[t]he burden of demonstrating that administrative procedures would be futile falls on the party seeking to avoid them," Crocker v. Tennessee Secondary Sch. Athletic Ass'n, 873 F.2d 933, 937 (6th Cir.1989). The plaintiffs have failed to meet this burden. Merely asserting their disagreement with the FDA is clearly insufficient; allowing such a claim to overcome the exhaustion requirement of the Federal Tort Claims Act would effectively eliminate the requirement entirely. Thus, the plaintiffs' harassment claim for damages is not properly before this court.
 
 
 41
 The plaintiffs also seek equitable relief on the grounds that the defendants had harassed their manufacturers, suppliers, and customers. In support of their motion for summary judgment, each defendant submitted an affidavit denying that he or she had taken any of the actions alleged in the complaint. The plaintiffs responded by submitting several affidavits from Mr. Lee. Having reviewed the affidavits, the district court found no genuine issue of fact concerning harassment, and granted summary judgment to the defendants. On appeal, the plaintiffs contend that this action was premature, as the district court granted the motion before the plaintiffs had taken several depositions that had been agreed to by the parties and that were noticed in the court's file. They also assert that Mr. Lee's affidavits demonstrate the existence of substantial factual issues.
 
 
 42
 We reject the plaintiffs' appeal. While the defendants have presented affidavits specifically denying the plaintiffs' assertions, the plaintiffs rely on Mr. Lee's affidavits, which present only hearsay evidence of harassment. Hearsay evidence is not sufficient to overcome a motion for summary judgment. According to Fed.R.Civ.P. 56(e), "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." (emphasis added). See also State Mut. Life Assurance Co. v. Deer Creek Park, 612 F.2d 259, 264 (6th Cir.1979). Thus, the district court correctly refused to consider this evidence in ruling on the motion for summary judgment. Without the hearsay evidence, Mr. Lee's affidavits fail to demonstrate the existence of a genuine issue of fact on the issue of harassment. "[U]nsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." Galindo v. Precision Am. Corp., 754 F.2d 1212, 1216 (5th Cir.1985) (quoting C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2738 (1983)).
 
 
 43
 We also reject the plaintiffs' assertion that their inability to conduct scheduled depositions precluded the district court from granting summary judgment to the defendants. The district court explicitly addressed this issue:
 
 
 44
 Plaintiffs have had ample incentive, opportunity, and time to come forward with the evidence necessary to withstand the motion, if such evidence exists. From the beginning defendants have been posturing this case as one for summary judgment. This is the second dispositive motion the defendants have filed. By stipulation and order on April 5, 1991, plaintiffs were granted additional time to respond to defendants' renewed motion for summary judgment. The only evidence offered was the third affidavit of Dan Lee.
 
 
 45
 (footnote omitted). The district court also noted that the plaintiffs failed to seek additional time to obtain rebuttal evidence, pursuant to Fed.R.Civ.P. 56(f). These facts indicate that the plaintiffs, rather than the district court, must be held responsible for their inability to conduct discovery. "[The plaintiff] had the burden of showing, by affidavit, why he was not able to oppose the motion for summary judgment. [The plaintiff] failed to meet his burden by not presenting any affidavit as required under Rule 56(f)." Klepper v. First Am. Bank, 916 F.2d 337, 343 (6th Cir.1990); see also Emmons v. McLaughlin, 874 F.2d 351, 357 (6th Cir.1989).
 
 IV
 
 46
 Having reviewed the record and the briefs, we find no reversible error in the judgments below. The decisions of the district court are AFFIRMED.
 
 
 47
 NATHANIEL R. JONES, Circuit Judge, dissenting.
 
 
 48
 For a variety of reasons, the majority concludes that the district court was correct in granting summary judgment for the defendants. I respectfully dissent.
 
 
 49
 * Pan American Pharmaceuticals, Inc. ("Pan American") distributes and manufactures various products regulated by the Food and Drug Administration ("FDA"), principally in the veterinary and pet fields. The Food, Drug, and Cosmetic Act ("FDCA") requires that "new" animal drugs be approved by the FDA prior to their distribution in interstate commerce. 21 U.S.C.A. § 360b (West Supp.1991). In actuality, however, only approximately seven percent of the new animal drugs on the market have received FDA approval.
 
 
 50
 Nevertheless, the FDA has brought numerous enforcement actions against Pan American's products. Pan American maintains that these products are innocuous, representing little, if any, risk to the health of humans or animals. Thus, Pan American contends that the employees of the FDA brought the enforcement actions to inflict financial hardship on Pan American rather than to protect public health.
 
 
 51
 As evidence of selective enforcement, Pan American and Lee allege that, in contrast, enforcement actions have not been brought against identical products produced by Pan American's competitors, including products manufactured locally by John Dunn, a former FDA inspector and former Pan American employee. Many of those competitive products have allegedly been sold for longer periods of time and in larger quantities than those produced by Pan American.
 
 
 52
 Pan American and Dan Lee allege the following facts to support their claim of selective enforcement by the FDA. While he was an FDA inspector, Dunn told Dan Lee, president and chief executive officer of Pan American, that Ken Shelin, enforcement director of the FDA Detroit field office, wished to hurt Lee's business and was out to get him. Dunn subsequently asked Lee for a job and was hired. Dunn then used Pan American's facilities to manufacture competing products and stole product formulations and other trade secrets from Lee. During this time, an FDA-inspection plan was sent to Dunn. That internal agency document, which was confidential and unavailable to the public, described FDA's plan for its next inspection of Pan American.
 
 
 53
 Dunn and Wendy Gould, the FDA field agent who replaced Dunn when he went to work for Lee, were good friends. On some weekday afternoons, Dunn would purchase building materials at local lumber companies and then assist Gould and her husband in constructing their new home. During this entire period, Gould was the FDA inspector in charge of inspecting Pan American.
 
 
 54
 Gould indicated to Lee that if he was not having a conflict with Dunn, Pan American would be having less difficulty with the FDA. She also said that Lee would have less trouble if Pan American moved to another FDA district.
 
 
 55
 In addition, Pan American and Lee allege that FDA field agents have intimidated, harassed, and discouraged Pan American's customers from supplying ingredients to Pan American or distributing its products. One supplier, for example, was told he would have his own problems with the FDA if he continued to supply ingredients to Pan American. Another was told that it would violate federal law if it continued to ship a particular ingredient to Pan American, because Pan American was illegally selling an unapproved new animal drug, when in fact, that particular drug had received FDA approval. Shelin and Gould deny ever contacting Pan American's competitors. They maintain, however, that such contact would be entirely appropriate.
 
 
 56
 In any event, the FDA did institute formal enforcement action against Pan American: United States v. Pan American Pharmaceuticals, No. 1-89-CV-917 (W.D.Mich. Sept. 13, 1990), appeal dismissed, No. 91-1426 (6th Cir. Sept. 25, 1991). As a result of that case, Pan American and Lee were enjoined from, among other things, marketing unapproved new animal drugs in interstate commerce. Their previous conduct in marketing such drugs was found to have been in violation of 21 U.S.C. § 331(d) (1988). In the enforcement action, Pan American and Lee raised a defense of selective prosecution, which the district court rejected because, inter alia, Pan American did not allege that it was similarly situated to a specific animal drug manufacturer and distributor that had not been the subject of an enforcement action.
 
 
 57
 Following the imposition of the injunction, Pan American and Lee filed simultaneously (1) an action for money damages, Pan American Pharmaceuticals v. Shelin, No. 1:90-CV-1062 (W.D.Mich. Apr. 5, 1991), appeal docketed, No. 91-1837 (6th Cir. July 19, 1991), and (2) a companion case, Pan American Pharmaceuticals v. Kessler, No. 1:90-CV-1063 (W.D.Mich. May 10, 1991), appeal docketed, No. 91-1839 (6th Cir. July 19, 1991), seeking to enjoin various FDA officials, including Shelin and Gould, from enforcing the FDCA against Pan American and Lee or, in the alternative, compelling the FDA to enforce the act fully against everyone. The complaints in these two cases contain substantially similar allegations. Pan American maintains that the actions of the FDA's employees have rendered it unable to compete with companies that produce the same products but are left unregulated. Pan American claims to have suffered financial damage so severe that its future viability is in jeopardy.
 
 II
 
 58
 Part II of the majority opinion addresses collateral estoppel. The majority concludes that the district court was correct in finding that collateral estoppel barred plaintiffs' suit; accordingly, the majority found no need to discuss the district court's finding that it lacked subject matter jurisdiction. I do not believe that collateral estoppel should bar plaintiffs' action, see infra part II.A, or that the district court lacked subject matter jurisdiction, see infra part II.B.
 
 
 59
 * Pan American and Lee contend that the district court erred in applying collateral estoppel to grant summary judgment on their constitutional claims. A right, question, or fact distinctly put in issue and directly determined by a court of competent jurisdiction cannot be disputed in a subsequent suit between the same parties. Montana v. United States, 440 U.S. 147, 153 (1979). Such a rule protects parties from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions. Id. at 153-54.
 
 
 60
 The collateral estoppel doctrine applies when the following four basic criteria are met:
 
 
 61
 (1) the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding;
 
 
 62
 (2) the determination of the issue must have been necessary to the outcome of the prior proceeding;
 
 
 63
 (3) the prior proceeding must have resulted in a final judgment on the merits; and
 
 
 64
 (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding.
 
 
 65
 Detroit Police Officers Ass'n v. Young, 824 F.2d 512, 515 (6th Cir.1987) (footnotes omitted). The district court found that all of the criteria were satisfied in the case.
 
 
 66
 In my view, the district court erred in its determination of the fourth issue. It relied on United States ex rel. Small Business Admin. v. Light, 766 F.2d 394, 397 (8th Cir.1985) for the proposition that Rule 56 of the Federal Rules of Civil Procedure, does not require trial courts to allow parties to conduct discovery before entering summary judgment. The holding of Light is actually much more limited. The Light court held only that it was not improper to refuse discovery where all the discoverable evidence would have been excluded by the parol evidence rule. Id. In fact, the court noted that Rule 56(f) ordinarily entitles the party opposing the motion to engage in discovery necessary to oppose the motion. Id.[1] Furthermore, the Supreme Court has stated the general rule that summary judgment is appropriate only "after adequate time for discovery." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).
 
 
 67
 The district court went on to rely on United States v. Sandoz Pharmaceuticals Corp., 894 F.2d 825 (6th Cir.), cert. denied, 111 S.Ct. 45 (1990) for the proposition that denial of discovery in a prior action did not preclude application of the collateral estoppel doctrine, where Sandoz failed to identify any undiscovered essential fact relevant to the issue, failed to show that the denial of its discovery request was unfair, and failed to show that discovery would have led to a different result. Id. at 828. Plaintiffs in the instant case, unlike Sandoz, have shown that the district court's denial of their discovery request denied them a full and fair opportunity to litigate in the prior action. The court rejected the plaintiffs' selective prosecution defense because, inter alia, (1) Pan American and Lee had not alleged that they were similarly situated to a specific animal drug manufacturer and distributor that had not been the subject of an enforcement action, and (2) Pan American and Lee had submitted nothing more than conclusory allegations concerning the government's alleged bad faith. A review of Lee's affidavit reveals, however, that he did, in fact, identify specific companies. Furthermore, the district court does not explain how the plaintiffs can support their "conclusory allegations" without discovery. This is not a case like Light where the allegations, even if proven, were insufficient as a matter of law. See infra part III.B.
 
 B
 
 68
 Pan American and Lee contend that the district court erred in determining that it lacked subject matter jurisdiction over the instant action. I agree.
 
 
 69
 Although agency decisions are presumptively subject to judicial review, there is a limited exception under § 701(a)(2) of the Administrative Procedures Act ("APA"). 5 U.S.C. § 701(a)(2). That section prevents courts from reviewing agency action that is committed by law to agency discretion. In Heckler v. Chaney, 470 U.S. 821 (1985), the Supreme Court held that the FDCA's enforcement provisions commit complete discretion to the Secretary to decide how and when they should be exercised. Id. at 835. "The FDA's decision not to take the enforcement actions requested by respondents is therefore not subject to judicial review under the APA." Id. at 837-38. The District of Columbia Circuit has clarified this holding as follows:
 
 
 70
 Heckler v. Chaney explained that the presumptive unreviewability of enforcement decisions stems from the recognition that an agency choice not to enforce generally involves a complicated balancing of factors peculiarly within the agency's expertise. The agency must assess whether its resources are best spent on one violation or another, whether the agency is likely to succeed if it acts, whether the requested enforcement action fits the agency's overall policies, and whether the agency would have enough resources to undertake the requested action in any event.
 
 
 71
 Coker v. Sullivan, 902 F.2d 84, 89 (D.C.Cir.1990) (citations omitted). The district court concluded, based on this authority, that it was without jurisdiction to grant plaintiffs' requested relief.
 
 
 72
 The district court also relied upon the decision of this circuit in Parke Davis & Co. v. Califano, 564 F.2d 1200, 1205 (6th Cir.1977), cert. denied, 435 U.S. 942 (1978). We noted that the forum for raising objections to enforcement is the enforcement proceeding itself. Id. at 1206.
 
 
 73
 Pan American and Lee respond that the APA does empower courts to "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Furthermore, plaintiffs urge a closer reading of Chaney. By its own language, Chaney does not apply to cases where a colorable claim of violation of constitutional rights is made: "No colorable claim is made in this case that the agency's refusal to institute proceedings violated any constitutional rights of respondents, and we do not address the issue that would be raised in such a case." Chaney, 470 U.S. at 838 (emphasis added). Justice Brennan, concurring in Chaney, was careful to note the limited nature of the majority holding:
 
 
 74
 Thus, the Court properly does not decide today that nonenforcement decisions are unreviewable in cases where ... (2) an agency engages in a pattern of nonenforcement of clear statutory language, as in Adams v. Richardson, 480 F.2d 1159 ( [D.C.Cir.] 1973) (en banc) ... or (4) a nonenforcement decision violates constitutional rights. It is possible to imagine other nonenforcement decisions made for entirely illegitimate reasons, for example, nonenforcement in return for a bribe, judicial review of which would not be foreclosed by the nonreviewability presumption....
 
 
 75
 Id. at 839 (Brennan, J., concurring) (citations omitted).
 
 
 76
 Turning to Parke Davis, that case involved pre-enforcement judicial review. Parke Davis, 564 F.2d at 1204. Thus, the "pending enforcement actions provided an opportunity for a full hearing before a court." Id. at 1206. Nonetheless, the Parke Davis court expressly noted that "the district court had jurisdiction under the Administrative Procedure Act to consider the complaint of Parke Davis, insofar as it questioned the regulations and procedures of the FDA as contrasted with the mere decision to initiate enforcement proceedings." Id.; cf. Southeastern Minerals v. Harris, Inc., 622 F.2d 758, 765 (5th Cir.1980) (even in the context of pre-enforcement action, injunctive relief is available if the FDA's actions were unduly threatening, harassing, or otherwise beyond the scope of the agency's authority). Pan American and Lee claim that the FDA selectively enforced its regulations against them, because they were suing John Dunn, the friend of an FDA official. This is certainly an "illegitimate reason," and Pan American and Lee are, of course, not seeking pre-enforcement review. Accordingly, in my view, the district court erred in holding that it lacked subject matter jurisdiction.
 
 III
 
 77
 Part III of the majority opinion addresses plaintiffs' harassment claim, including a discussion of how that claim relates to exhaustion of remedies and equal protection. The district court artificially excised plaintiffs' harassment claim in order to apply collateral estoppel to the claim of selective enforcement. Insofar as I would hold that the district court erred in applying collateral estoppel, see supra part II.A, this section addresses exhaustion, see infra part III.A, and equal protection, see infra part III.B, as those doctrines relate to plaintiffs' selective-enforcement claim.[2]
 
 
 78
 * Pan American and Lee contend that the district court erred in granting summary judgment based, in part, on failure to exhaust the remedies of the Federal Tort Claims Act. Plaintiffs concede that they have failed to exhaust their administrative remedies as required by the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2675. Furthermore, we have held that exhaustion is a jurisdictional prerequisite to suit under the FTCA and cannot be waived. Garrett v. United States, 640 F.2d 24, 26 (6th Cir.1981).
 
 
 79
 Plaintiffs do not, however, allege an ordinary tort. Instead, they claim that "Defendants ... have intentionally chosen to enforce application of the [Federal Food, Drug, and Cosmetic] Act only against Plaintiffs, with regard to these products, with the purpose and intent of depriving Plaintiffs of their right to equal protection of the law and the due process of the law, so as to drive Plaintiffs out of their lawful business." J.A. at 6 (No. 91-1837). The doctrine of sovereign immunity does not protect federal officials who have been sued in their personal capacities for violating a plaintiff's constitutional rights. Ecclesiastical Order of the Ism of Am., Inc. v. Chasin, 845 F.2d 113, 116 (6th Cir.1988). These suits, known as Bivens actions, grant victims of constitutional violations by federal agents a right of action against those individuals for compensatory and punitive damages. Carlson v. Green 446 U.S. 14, 21-22 (1980); Bivens v. Six Unknown Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971). Here, plaintiffs seek such relief.
 
 
 80
 It is clear that Bivens actions are properly brought against federal officials, even if an action could have been instituted also under the FTCA. Green, 446 U.S. at 19-22; United States v. Smith, 111 S.Ct. 1180, 1185 (1991). As defendants have done here, the defendants in Green argued that the plaintiffs already had a remedy under the FTCA and were, therefore, barred from bringing a Bivens action. Stating that "nothing in the FTCA or its legislative history [shows] that Congress meant to pre-empt a Bivens remedy or to create an equally effective remedy for constitutional violations," the Supreme Court disagreed. Green, 446 U.S. at 19-20 (footnote omitted). The Court held that a Bivens -type action would not be precluded by the FTCA because the FTCA does not sufficiently protect citizens' constitutional rights. Id.
 
 
 81
 Exhaustion of administrative remedies is still, however, a prerequisite to bringing a Bivens action. Davis v. Keohane, 835 F.2d 1147, 1148 (6th Cir.1987) (per curiam). Plaintiffs respond that exhaustion is unnecessary where the attempt to exhaust would be futile. Patsy v. Board of Regents, 457 U.S. 496 (1982); Lyons v. United States Marshals, 840 F.2d 202, 205 (3d Cir.1988). "Exceptions to the exhaustion requirement are appropriate where the available administrative remedies either are unavailable or wholly inappropriate to the relief sought, or where the attempt to exhaust such remedies would itself be a patently futile course of action." Hessbrook v. Lennon, 777 F.2d 999, 1003 (5th Cir.1985). The burden of demonstrating that administrative procedures would be futile falls on the party seeking to avoid them. Honig v. Doe, 484 U.S. 305, 327 (1988); Crocker v. Tennessee Secondary Sch. Athletic Ass'n, 873 F.2d 933, 937 (6th Cir.1989).
 
 
 82
 The district court found that Pan American and Lee utterly failed to demonstrate the futility of administrative procedures. Plaintiffs' position is that the futility is obvious on these facts; in their words: "[b]ased on defendants' contentions in this lawsuit and in the FDA actions against Pan American, exhaustion here would have been pointless." Br. of Appellant at 5 (No. 91-1837). The common sense behind their claim is certainly compelling. Prior to this action, the FDA brought an enforcement action against plaintiffs, in which plaintiffs alleged selective enforcement. To require plaintiffs, after being singled out for enforcement, to exhaust the FDA's internal procedures would certainly seem futile. Cf. McKart v. United States, 395 U.S. 185, 200 (1969) (holding, in the context of a Selective Service System registrant who did not use the administrative process to appeal his draft classification, that "we simply do not think that the exhaustion doctrine contributed significantly to the fairly low number of registrants who decide to subject themselves to criminal prosecution for failure to submit to induction"). The FDA has certainly reached a final position that its enforcement action against plaintiffs was entirely legal. Cf. id. ("[W]here there appears no significant interest to be served in having the System decide the issue before it reaches the courts, we do not believe that petitioner's failure to appeal his classification should foreclose all judicial review.").[3]
 
 B
 
 83
 As alternative support for the district court's dismissal of plaintiffs' claims, defendants contend that plaintiffs have failed to allege facts sufficient to demonstrate violation of their due process or equal protection rights. "[T]he concepts of equal protection and due process ... are not mutually exclusive," and both are, of course, applicable to the federal government via the Due Process Clause of the Fifth Amendment. Bolling v. Sharpe, 347 U.S. 497, 499 (1954).
 
 
 84
 To make out a prima facie case of selective enforcement, plaintiffs must demonstrate that (1) they were singled out for prosecution among others who were similarly situated, and (2) this selection was invidious or in bad faith. United States v. Peete, 919 F.2d 1168, 1176 (6th Cir.1990). Unfortunately, our circuit has often taken the far-too-restrictive view that invidiousness and bad faith are demonstrated only where the selection was based on "an impermissible consideration such as race, religion, or exercise of constitutional rights." United States v. Schmucker, 815 F.2d 413, 418 (6th Cir.1987). Selective enforcement is not limited to invidiousness or suspect classifications; as the factual allegations in this case demonstrate, a prosecution may be in bad faith--that is, undertaken based on an unlawful motive--even when a protected class is not involved.
 
 
 85
 This confusion arises because our statement of the selective-enforcement standard has strayed from the Supreme Court's more precise statement. Selective enforcement is a constitutional violation if "the selection was deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification." Oyler v. Boles, 368 U.S. 448, 456 (1962) (emphasis added). Obviously, enforcement actions instituted in aid of former FDA officials can be viewed as creating an arbitrary classification--personal enemies of former FDA officials--in violation of equal protection and due process. The central issue, however, is that the FDA would be employing an unjustifiable standard. Cf. Bordenkircher v. Hayes, 434 U.S. 357, 364 (1978) (applying Oyler and analyzing whether "the prosecutor's desire to induce a guilty plea is an 'unjustifiable standard' "). Insofar as Pan American and Lee undoubtedly alleged a prosecution based on an unjustifiable standard, I would find that the district court erred in finding their allegations insufficient to satisfy the second prong of the selective-prosecution inquiry.
 
 
 86
 In its ruling on collateral estoppel, the district court found also that Pan American and Lee failed to meet the first prong--that is, the court found that they failed to identify a specific, similarly situated manufacturer. The district court evidently believed that it was not sufficient to identify other companies that manufacture similar products; rather, plaintiffs had to demonstrate another manufacturer with the same or a similar range of products. The FDA's enforcement action, however, was taken against particular products. Showing that others manufacture the same products, yet the FDA has not sought enforcement, should be sufficient. Accordingly, I would hold that Pan American and Lee stated an equal protection or due process claim.
 
 
 87
 Finally, in regard to qualified immunity, the defendants contend that Pan American and Lee have not demonstrated that their equal protection right is clearly established. Contrary to the defendants' contention, the Supreme Court has repeatedly stated that "selectivity in the enforcement of criminal laws is ... subject to constitutional constraints." Wayte v. United States, 470 U.S. 598, 608 (1985) (quoting United States v. Batchelder, 442 U.S. 114, 125 (1979)). In fact, we have even acknowledged, in a § 1983 action, that absolute immunity does not apply where a prosecutor files a "complaint out of a wholly personal motivation unrelated to his official duties." Joseph v. Patterson, 795 F.2d 549, 555 (6th Cir.1986), cert. denied, 481 U.S. 1023 (1987). Accordingly, the right to be free of selective enforcement is clearly established.
 
 IV
 
 88
 In the final analysis, this case presents genuine issues of material fact that make summary judgment inappropriate. The district court took the view that the facts, as alleged, were insufficient to establish a constitutional tort, and that view shaped its denial of discovery and the subsequent proceedings. I would reverse the district court, because I take the view that, if proven, an action instituted to aid a friend, and former government colleague, is an improper use of governmental authority and violated plaintiffs' rights.
 
 
 
 [1]
 The defendants claim that Pan American and Lee never specifically moved for discovery under Rule 56(f). While admitting that "they did make some kind of oral request for discovery, which they later contended was a rule 56(f) motion." Br. of Appellees at 18 n. 8 (No. 91-1837). Rule 56(f), however, does not specify any particular form of motion. Furthermore, the district court was aware, both in the prior injunction action and in the instant case, that plaintiffs desired an opportunity for discovery
 
 
 [2]
 The district court's division of plaintiffs' claims into two categories--constitutional and tort--and into two other categories--harassment and selective enforcement--was a very confusing method of analysis. In actuality, review of plaintiffs' complaint reveals that plaintiffs did not so divide their claims. If the district court had consistently viewed the claims as constitutional allegations, it would have reached the issue of whether Pan American and Lee have standing to contest a constitutional tort of harassment directed against third parties (the suppliers and distributors). I express no opinion on the issue
 
 
 [3]
 Pan American and Lee do not argue it, but they could potentially demonstrate futility based also upon the fact that the FDA's administrative process cannot reward them the relief they seek: money damages, including punitive damages. See Goar v. Civiletti, 688 F.2d 27, 28-29 (6th Cir.1982)