NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0246n.06

No. 08-2619

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Apr 21, 2010**
LEONARD GREEN, Clerk

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff-Appellee,

       v.

PATRICK D. QUINLAN,

    Defendant-Appellant.

On Appeal from the United
States District Court for the
Eastern District of Michigan
at Ann Arbor

_____/

**Before:**     **GUY, COLE, and SUTTON, Circuit Judges.**

**RALPH B. GUY, JR., Circuit Judge**.     Defendant Patrick D. Quinlan, Sr., appeals from the entry of judgment against him in this civil enforcement action brought by the Securities and Exchange Commission (SEC or Commission). The district court, finding that Quinlan's criminal convictions established that he committed various securities law violations, entered judgment enjoining him from future violations of securities laws and ordering that Quinlan be prohibited from acting as an officer or director of any issuer having a class of securities registered with the SEC pursuant to Section 12 of the Exchange Act (15 U.S.C. § 78l), or that is required to file reports pursuant to Section 15(d) of the Exchange Act (15 U.S.C. § 78o(d)). Quinlan's pro se appeal raises a number of complaints about the proceedings, most of which he also disavows as a basis for relief from this court. After

reviewing the record and considering the arguments presented on appeal, we find no error and affirm.

**I.**

The SEC filed this civil enforcement action in April 2002, against Patrick Quinlan, Sr., and six other defendants alleging a "large scale securities offering and accounting fraud perpetrated by senior officers and personnel of MCA Financial Corporation ("MCA") to buttress a failing, high-risk mortgage banking business." MCA, a privately held holding company, consisted of three mortgage-related businesses. Those businesses included the origination of conforming mortgages, the origination and securitization of nonconforming loans and mortgages, and the acquisition and rental of low income housing in and near the City of Detroit. Quinlan was MCA's CEO, Chairman of the Board, and a director from its inception in 1989 until it filed for bankruptcy in January 1999. MCA had, at its height, offices in 12 states and as many as 1,000 employees.

The SEC alleged that from 1994 until January 1999, the defendants engaged in a fraudulent scheme to falsely inflate income and equity to enhance cash flow to hide losses. Material misrepresentations were made in connection with the offer or sale of securities; specifically, corporate debentures and securitized pools of nonconforming mortgages sold as "real estate pass-through certificates." The misrepresentations made the financial reports and registration statements relied upon by investors and lenders materially false. Ultimately, the fraud at MCA resulted in losses of more than $256 million.

Federal criminal proceedings were already under way when this action was filed, and

charges against Quinlan and two others were added by superceding indictment in June 2002. Not long after, at the request of the United States Attorney's Office, the district court ordered a stay of this action pending resolution of the criminal charges. In February 2004, Quinlan pleaded guilty pursuant to a Rule 11 Plea Agreement to two counts—making false statements to the SEC and conspiring with others to commit a federal crime—and the remaining counts were dismissed. More than a year later, after several changes in counsel, Quinlan moved unsuccessfully to withdraw his guilty plea. Quinlan was sentenced to 120 months' imprisonment and ordered to pay more than $256 million in restitution.

Without repeating in full the factual basis set forth in the Plea Agreement, Quinlan admitted that: (1) he directed and participated in the raising of funds from investors and lenders to finance MCA; (2) he knowingly conspired to obtain such funds by false and fraudulent representations; and (3) as part of MCA's Financial Management Committee, he knowingly made decisions to deliberately engage in business and accounting practices that were fraudulent. Quinlan stipulated that material misrepresentations were made with respect to both the risks of and returns on the pass-through certificates. Investors were sent statements that contained material misrepresentations, and some pool assets were sold and used for MCA corporate purposes.

Quinlan also admitted that MCA knowingly prepared false and fraudulent financial statements that concealed MCA's true financial condition, as well as the value, quality, and even ownership of the loans and mortgages. Those financial statements were provided to MCA's lenders that provided secured lines of credit of as much as $210 million and a

pension fund that provided guarantees and loans totaling $60 million. It was also stipulated that MCA filed quarterly reports (10-Qs), annual reports (10-Ks), and registration statements (S-18s, SB-2s, S1s) with the SEC that contained materially false statements and omissions concealing MCA's true financial condition. Specifically, Quinlan stated that on April 29, 1998, during and in furtherance of the conspiracy, he signed the Form 10-K (annual report) for fiscal year ending January 31, 1998, as CEO and Chairman of MCA, "knowing that the 10-K contained materially false and fraudulent statements and concealed material facts."

During 2004, Quinlan also pleaded guilty in state court to conspiracy to commit securities fraud and three counts of violating anti-fraud provisions under Michigan Securities law. The criminal complaint in that case focused on the material misstatements made to investors with respect to the mortgage pools, including: that investors were not informed that mortgages were removed from pools; that, as a result, certain pools did not have sufficient assets to pay investors what would be due; and that MCA sent investors letters that contained false information about the rate of return to conceal the shortfall. The state court sentenced Quinlan to one year in prison, to run concurrently with his federal sentence, and ordered that he pay restitution of $83 million.

On May 26, 2006, after sentencing in the federal case, the SEC filed a motion to lift the stay in this civil enforcement action. Quinlan asked that the district court defer ruling on the motion to allow time for a decision in his direct appeal, which the court did. Once this court affirmed, *United States v. Quinlan*, 473 F.3d 273, 277-78 (6th Cir.), *cert. denied*, 128

S. Ct. 251 (2007), the district court lifted the stay and directed that Quinlan answer.[1]

Quinlan's February 14, 2007 responsive pleading moved to dismiss the action as barred by the three-year statute of limitations found applicable to *private* securities fraud actions under § 10(b) of the Exchange Act in *Lampf, Pleva, Lipkind, Prupis & Pettigrow v. Gilbertson*, 501 U.S. 350 (1991). The SEC's twofold response argued that this limitations period did not apply to enforcement actions, but conceded that the general "catch-all" five-year limitations period found in 28 U.S.C. § 2462 would apply to the request for civil penalties. Quinlan's requests for extensions of time to reply were granted, but his motion for appointment of counsel was denied. Quinlan filed his reply on May 7, 2007.[2]

Before Quinlan's motion to dismiss was decided, the SEC filed its own motion for voluntary dismissal of the request for civil penalties. The district court granted the SEC's motion and denied Quinlan's several motions for reconsideration, finding, *inter alia*, that Quinlan was not prejudiced by what was in effect an amendment dismissing the request for civil penalties; that the limitations period implied for *private* securities fraud claims does not apply to civil enforcement actions by the SEC; and that § 2462 was not a bar to the SEC's remaining claims for injunction and an officer/director bar. The statute of limitations would

---

[1]Quinlan complains repeatedly that he was not present at this hearing, but he stated in his next district court filing that he would not have opposed lifting the stay had he been there. In fact, this is one of the complaints that Quinlan expressly disavows as a basis for relief on appeal. Nor has he made a showing of either error or prejudice resulting from the lifting of the stay.

[2]Quinlan argues that the denial of his request for appointment of counsel caused him to be unable to mount a "complete defense" in violation of his Sixth and Fourteenth Amendment rights. As a civil action, however, Quinlan had no Sixth Amendment right to counsel. *Shepherd v. Wellman*, 313 F.3d 963, 970 (6th Cir. 2002). Nor can we conclude that it was an abuse of discretion to deny his request for court-appointed counsel. *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993).

be raised again on summary judgment, and Quinlan's main contention on appeal is that the district court erred in its application of § 2462.

The SEC's motion for summary judgment, filed April 28, 2008, relied on Quinlan's convictions to preclude him from relitigating the facts of MCA's fraudulent conduct or his knowledge and participation in the fraud. Quinlan's response argued the statute of limitations issue, asked that a decision on the motion be deferred because he intended to file a § 2255 motion to set aside his guilty plea, and claimed that the SEC had engaged in "unprofessional" or "improper" conduct. Although Quinlan then filed a § 2255 motion in the federal criminal case, the district court denied his § 2255 motion, and this court has denied his motion for certificate of appealability. Any claim that a decision on the summary judgment motion should have been deferred is now moot. *But see Smith v. SEC*, 129 F.3d 356, 362 n.7 (6th Cir. 1997) (observing that a direct appeal does not deprive conviction of preclusive collateral estoppel effect).[3]

On November 7, 2008, in a thorough 25-page opinion, the district court, in turn, considered the alleged violations by Quinlan; found application of collateral estoppel was warranted; and determined that injunctive relief and a permanent officer and director bar

---

[3]Quinlan's assertions concerning improper conduct by the SEC are not entirely clear, although they seem to rely on a reported statement by FBI Agent Hunt to Quinlan's defense attorney indicating that the investigation had revealed that MCA's general ledgers balanced "to the penny." Quinlan characterizes this statement as a "whistleblower's" accusation that the SEC's civil complaint in this case was not based upon its "own" investigation. On appeal, Quinlan complains that the SEC's failure to respond to questions about this in connection with its motion for summary judgment denied him his right to confrontation and resulted in the withholding of information vital to the defense. While it appears that the significance of this statement was a point of contention between Quinlan and his criminal defense attorney before Quinlan pleaded guilty, nothing in these arguments suggests that the district court erred in granting summary judgment in this case. Nor was it error to disregard Quinlan's multiple supplemental filings, which included this argument, because they were filed without leave.

should be imposed against Quinlan. The district court also found that the statute of limitations did not apply to the claims for this relief. Judgment was entered accordingly on November 14, 2008, and Quinlan's motion for reconsideration was denied on December 1, 2008. This appeal followed.

## II.

In deciding a motion for summary judgment, the court must view the factual evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is appropriate when there are no issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). A district court's decision granting summary judgment is reviewed de novo. *Smith v. Ameritech*, 129 F.3d 857, 863 (6th Cir. 1997).

### A.    Collateral Estoppel

Collateral estoppel, also known as issue preclusion, " bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." *Taylor v. Sturgell*, 128 S. Ct. 2161, 2171 (2008) (citation omitted). A federal court decision has collateral estoppel effect when the following four elements are satisfied:

> (1) the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding; (2) determination of the issue must have been necessary to the outcome of the prior proceeding; (3) the prior proceeding must have resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding.

*Smith v. SEC*, 129 F.3d 356, 362 (6th Cir. 1997) (en banc) (quoting *Detroit Police Officers*

*Ass'n v. Young*, 824 F.2d 512, 515 (6th Cir. 1987)).

The district court found, and Quinlan does not dispute, that the prerequisites for

collateral estoppel are met and he is precluded from relitigating MCA's fraud or his

knowledge of and participation in the fraudulent conduct. Quinlan's misrepresentation and

securities fraud were essential to his convictions, and the same conduct formed the basis of

the violations alleged in this enforcement action. Quinlan's culpability was actually litigated,

was necessary to the outcome, resulted in a final judgment of conviction, and was resolved

after a full and fair opportunity to litigate in the criminal case.

**B.     Substantive Violations, Permanent Injunction, and Officer/Director Bar**

Addressing the allegations by type, the district court found that the SEC had

established that Quinlan was primarily liable for violating the anti-fraud provisions of

Section 17(a) of the Securities Act (15 U.S.C. § 77q(a)), Section 10(b) of the Exchange Act

(15 U.S.C. § 78j(b)), and Rule 10b-5 (17 C.F.R. § 240.10b-5). The district court also found

that Quinlan was liable for violating the books and records and internal controls provisions

of Section 13(b)(5) of the Securities Act (15 U.S.C. § 78m(b)(5)) and Exchange Act Rules

13b2-1 and 13b2-2 (17 C.F.R. §§ 240.13b2-1 and 240.13b2-2). Finally, the district court

found Quinlan aided and abetted MCA's violations of the reporting and record keeping

provisions of Sections 13(b)(2)(A), 13b(2)(B), and 15(d) of the Exchange Act (15 U.S.C. §§

78m(b)(2)(A), 78m(b)(2)(B), and 78o(d)), and Exchange Act Rules 12b-20, 15d-1, and 15d-

13 (17 C.F.R. §§ 240.12b-20, 15d-1, 15d-13). On appeal, Quinlan does not argue that there

are any material questions of fact with respect to the alleged substantive violations, and our review reveals no error in the district court's determination that the SEC established Quinlan's liability for such violations.

The SEC may seek permanent or temporary injunction against future violations of securities laws under Section 20(b) of the Securities Act (15 U.S.C. § 77t(b)) and Section 21(d)(1) of the Exchange Act (15 U.S.C. § 78u(d)(1)), upon showing there is a reasonable and substantial likelihood that, if not enjoined, the defendant would violate securities laws in the future. *See SEC v. Youmans*, 729 F.2d 413, 415 (6th Cir. 1984). This court has identified the following factors to be considered in determining the likelihood of future violations: (1) "the egregiousness of the violations"; (2) "the isolated or repeated nature of the violations"; (3) "the degree of scienter involved"; (4) "the sincerity of the defendant's assurances, if any, against future violations"; (5) "the defendant's recognition of the wrongful nature of his conduct"; (6) "the likelihood that the defendant's occupation will present opportunities (or lack thereof) for future violations"; and (7) "the defendant's age and health." *Id*. No single factor is determinative. *Id*.

In addition, Section 20(b) of the Securities Act and Section 21(d)(1) of the Exchange Act provide that a person may be barred from serving as an officer or director of a public company if that person violates the anti-fraud provisions of either Act and his conduct demonstrates "unfitness to serve as an officer or director." The following factors may be considered in determining whether a defendant is "unfit": "(1) the 'egregiousness' of the underlying securities law violation; (2) the defendant's 'repeat offender' status; (3) the

defendant's 'role' or position when he engaged in the fraud; (4) the defendant's degree of scienter; (5) the defendant's economic stake in the violation; and (6) the likelihood that misconduct will recur." *SEC v. Patel*, 61 F.3d 137, 141 (2d Cir. 1995) (internal quotation marks and citation omitted).

The district court found that a permanent injunction against future violations of securities law and imposition of a permanent officer/director bar were warranted, reasoning as follows:

> First and foremost, the evidence shows that Quinlan knowingly and deliberately engaged in fraudulent business and accounting practices for an extended period of time for 1994 through 1999. In his capacity as CEO of MCA, Quinlan repeatedly made false financial statements and misrepresented material facts with the intention to mislead investors, causing investors to lose millions of dollars. He lied to the auditors. Quinlan's conduct certainly was egregious. At his sentencing, the trial court characterized Quinlan as the "dominant force" and the "architect" of the scheme. (Pl's Exh. 26, p. 2). Moreover, the Court is not persuaded that Defendant recognizes the wrongful nature of his conduct, in light of his repeated denials of any wrongdoing in the downfall of MCA, his lack of remorse for the tremendous loss suffered by the investors, and his attempt to withdraw his guilty plea. (*Id.*, p. 39). He benefitted from his conduct; he "lived a very good life for a very long time based on the proceeds generated by [the] offense." (*Id.*, p. 40). Should Quinlan retain access to the same occupation upon his scheduled release from prison, the Court cannot disregard the reasonable and substantial likelihood that he will engage in future violations of the federal securities laws at the public's risk and expense. (*See id.*, p. 40, recognizing the likelihood that the public is likely to suffer additional danger from Quinlan).

Based on our review of the record, we find that the district court did not abuse its discretion either by enjoining Quinlan from future violations or permanently barring Quinlan from serving as an officer or director of a public company.

## C.     Statute of Limitations

Neither the Securities Act nor the Exchange Act explicitly contain a statute of limitations for SEC civil enforcement actions; but Quinlan argues that the SEC's claims for injunctive relief and imposition of the officer/director bar are governed by the five-year limitations period found in 28 U.S.C. § 2462. Section 2462 provides that:

> Except as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued if, within the same period, the offender or the property is found within the United States in order that proper service may be made thereon.

The SEC's abandonment of the claim for civil penalties in this case obviates the need to determine when they "first accrued" in this case. Not surprisingly, however, claims for civil penalties in a civil enforcement action brought by the SEC have been recognized as being governed by § 2462. *See SEC v. Jones*, 476 F. Supp.2d 374, 380 (S.D.N.Y. 2007); *SEC v. Alexander*, 248 F.R.D. 108 (E.D.N.Y. 2007); *SEC v. Kelly*, 663 F. Supp.2d 276, 286 (S.D.N.Y. 2009). The question here is whether the equitable remedies ordered in this case are also "penalties" subject to the statute of limitations in § 2462.[4]

Equitable relief in SEC enforcement actions may include orders of disgorgement, injunctions against future violations, or imposition of an officer and director bar. Some courts have held that some or all of these equitable remedies are exempt from § 2462's limitations period as a matter of law. *See Kelly*, 663 F. Supp.2d at 286 (citing cases);

---

[4]Not challenged on appeal is the finding that, as other courts have concluded, no other statute of limitations is implied or borrowed for civil enforcement actions brought by the SEC to vindicate public (not private) interests. *SEC v. Rind*, 991 F.2d 1486, 1488-91 (9th Cir. 1993); *SEC v. Calvo*, 378 F.3d 1211, 1218 (11th Cir. 2004). We note that there is no authority to the contrary.

*Zacarias v. SEC*, 569 F.3d 458, 479 (D.C. Cir. 2009) (holding disgorgement not punitive).

Other courts have engaged in a fact-intensive inquiry to determine whether the equitable

remedies sought in a particular case are remedial or punitive. *See Alexander*, 248 F.R.D. at

115-16 (discussing alternative approaches); *Johnson v. SEC*, 87 F.3d 484, 488 (D.C. Cir.

1996). This unsettled question is immaterial to this case, as the district court undertook the

fact-intensive inquiry articulated in *Johnson* and applied in *Jones*.

Quinlan relies on *Jones*, which held that "the limitations period in § 2462 applies to

civil penalties and equitable relief that seeks to punish, but does not apply to equitable relief

which seeks to remedy a past wrong or protect the public from future harm." *Jones*, 476 F.

Supp.2d at 381; *see also Johnson*, 87 F.3d at 488-89. Although the court in *Jones* ultimately

concluded that the SEC failed to show that the permanent injunction was aimed at protecting

the public from future harm, the district court carefully considered the matter and found that

this showing had been made in this case. The district court recognized the serious

consequences, explaining that:

> The potential collateral consequences to Quinlan from a permanent
> injunction and officer and director bar are admittedly considerable, even from
> an objective point of view. The practical effect of such an injunction would
> work to stigmatize Defendant in the investment community. Moreover, the
> injunction would deprive him of any ability and opportunity to earn a living as
> an offic[er] or director throughout his life after his release from the prison.
> Because of the far-reaching consequences to Defendant that the bar poses, the
> Court carefully considers evidence demonstrating the likelihood of recurrence.

Then, considering the likelihood of recurrence in light of the factors identified by the Second

Circuit in *SEC v. Commonwealth Chem. Sec., Inc.*, 574 F.2d 90, 99 (2d Cir. 1978), the

district court found all the factors favored the SEC's position.

First, Quinlan is guilty of conspiracy to commit fraud and to make false statements, and of making false and fraudulent statements in an annual report filed with the SEC. Second, Defendant's conduct was not the result of negligence [or] insufficient attention to the business–he was aware of the misrepresentations that resulted in inflated values for property, and he also was aware that MCA's financial statements did not properly reflect the unfunded liabilities in the pools. According to the Rule 11 Plea Agreement, Quinlan "knowingly conspired with other employees, officers and directors of MCA to obtain these funds by means of false and fraudulent pretense, representations and promises." Third, Defendant's securities laws violations were not an isolated occurrence, but were carried out over an extended period of time throughout MCA's daily operations. Fourth, in his criminal case, Quinlan attempted to withdraw his Rule 11 guilty plea and to maintain his innocence after he entered the plea. In the instant civil action, Defendant continues to assert that he should not be held liable for any and all of the injurious consequences arising from his misrepresentations and other fraudulent conduct. Finally, if the equitable relief is not granted, the Court finds it likely that Defendant would return to the investment industry upon his release from prison, given that the current dispute over the applicability of Section 2462 is brought before the Court precisely because Defendant wants to retain access to the same occupation.

(Citations omitted.) Based on these findings, the district court concluded that there was a risk of recurrence, that the risk to the investing public outweighed the severe collateral consequences of the equitable relief, and, therefore, that the permanent injunction and officer and director bar were remedial rather than punitive. These findings are supported by the record, and establish that the equitable relief was not a "penalty" subject to § 2462's five-year statute of limitations.

**AFFIRMED**.